## Case No. 16,468.

### UNITED STATES v. THIRTY–SIX BARRELS OF HIGH WINES.

[7 Blatchf. 459; 1 12 Int. Rev. Rec. 40.]

Circuit Court, N D New York. June, 1870.

INTERNAL REVENUE LAWS — RULE OF CONSTRUCTION—WAREHOUSED SPIRITS.

1. Distilled spirits. while in such a distillery warehouse as is provided for by section 27 of the act of July 13, 1866 (14 Stat. 155), and under the lock of the inspector provided for by section 29 of that act, are still in the possession of the owner of such spirits and warehouse. within the meaning of section 48 of the act of June 30, 1864 (13 Stat. 240), as amended by section 9 of the said act of July 13, 1866, and liable to forfeiture for a violation of that section.

[Cited in U. S. v. Eighteen Barrels of High Wines, Case No. 15,033; U. S. v. Quantity of Tobacco, Id. 16,106.]

2. The proper rule stated, for the construction of revenue laws.

[Cited in U. S. v. Mynderse, Case No. 15,850; U. S. v. Thirty-Four Barrels of Distilled Spirits, Id. 16,461; U. S. v. De Goer, 38 Fed. 83.]

[Appeal from the district court of the United States for the Northern district of New York.]

William Dorsheimer, U. S. Dist. Atty. John Snow, for claimants.

WOODRUFF, Circuit Judge. The proceeding herein in the district court [case unreported] was for the condemnation of 36 barrels of high wines and 7 barrels of grape brandy, with other property, seized and claimed to have been forfeited to the United States, by reason of violations of the provisions of the internal revenue act of June 30, 1864 (13 Stat. 223), and the subsequent amendments thereof. On the trial, it was held. upon all the proofs, that the property seized, if forfeited at all, must be forfeited under the provisions of the 48th section of the said act of 1864, as amended by section 9 of the act of July 13, 1866 (14 Stat. 111). That section, among other things, provides, that "all goods, wares, merchandise, articles or objects on which taxes are imposed by the provisions of law, which shall be found in the possession, or custody, or within the control, of any person or persons, for the purpose of being sold or removed by such person or persons in fraud of the internal revenue laws. or with design to avoid payment of said taxes. may be seized by the collector, * * * and the same shall be forfeited to the United States." The act also points out the proceeding to be had to enforce the forfeiture.

The evidence showed, that the claimants hired or "rented," occupied, and carried on the business of distilling at. a distillery in Lenox, Madison county, N. Y., and had distilled spirits liable to duty and tax under the internal revenue laws, for a period of six months prior to October 30, 1867, on which day the property described in the information was seized upon the distillery premises. Of the property seized, 36 barrels of high wines and 7 barrels of grape brandy were found and seized in the bonded-warehouse of said distillery, on the distillery premises. the bonded-warehouse being a building adjoining said distillery, on the same premises, under the government lock, and under the superintendence and control of the government inspector and store-keeper appointed under the internal revenue laws. Other proofs were given, tending to show the fraudulent acts of the claimants in furtively and surreptitiously removing from the distillery spirits on which the tax was not paid, and tending to show a fraudulent removal of spirits from the receiving room in charge of such inspector, by a concealed trap-door hidden from ordinary observation. and other fraudulent acts of removal of spirits distilled by them, at different times during the six months preceding the seizure, otherwise than to bonded-warehouses, and without the payment of the tax thereon, and also to show other acts of fraud and violations of the revenue laws relating to distillers, and to secure the due payment of the tax upon spirits distilled by them.

Under the instructions of the court, by which the jury were directed to confine their attention to the above-mentioned 48th section, under which alone, upon the proofs given, the United States were entitled to a verdict, the jury found for the United States, that the goods, property, &c., seized, were forfeited to the use of the United States, to the purport and effect in the information charged. But, under the further instruction of the court, which is brought under review by the writ of error herein, the jury excepted from their verdict the 36 barrels of high wines, and the 7 barrels of grape brandy, found, and seized, in the warehouse. This instruction was as follows: "You will recollect, that the evidence discloses the fact, that the 36 barrels of high wines, and the 7 barrels of grape brandy, were, at the time of the alleged seizure, in the bonded-warehouse. I charge you, that, under the evidence in this case, this property cannot be considered in the possession, or custody, or within the control, of these claimants. under the 48th section, so as to justify a verdict against the claimants, in reference to the 36 barrels of high wines, and the 7 barrels of grape brandy. If the person owning the property in the bonded-warehouse had fraudulent means of entering there, and thus had the control of this property, then, in my judgment, it might be forfeited, under the provisions of this section; but. there is no evidence, in this case, from which the jury could infer, according to my understanding of the case, that this bonded-warehouse, or the property within it, of any portion of it, was at all in the posses-

1 [Reported by Hon. Samuel Blatchford. District Judge, and here reprinted by permission.]

sion, or custody, or within the control, of these claimants; and, no matter what these claimants may have done, no matter what intentions they had, in my view of the case, this property, thus beyond their control, and out of their possession, is not subject to forfeiture, under the 48th section, before referred to." To these instructions the attorney for the United States excepted, and he requested the court to charge, that the property, while in the bonded-warehouse, was in the joint custody of the claimants, as owners and proprietors of such bonded-warehouse, and of the proper officer designated by the secretary of the treasury to take charge thereof; but the court declined so to charge, and exception was duly taken. Other language in the charge was excepted to, and, without reciting it further, it will suffice to say, that it imported, that the mere fact that the property was in the distillery bonded-warehouse withdrew it from liability to forfeiture, no matter what the owners had done, and no matter what were their intentions, unless they had some fraudulent or independent means of entrance.

I think that this is a too narrow and technical construction of the language of the act of congress. The words of the 48th section are, "shall be found in the possession or custody, or within the control, of any person," for the purpose of being sold, or removed, &c., in fraud of the revenue laws, or with design to avoid payment of said taxes. Clearly, the object of this provision is, to enable the government to anticipate and prevent the sale or removal, and to proceed to a forfeiture before the overt act of fraud is perpetrated; and it is enacted in view of the very great difficulty, if not impracticability, of following distilled liquors, after sale or removal, or of identifying them, if found, and, also, in view of the ease with which they may be passed into the hands of bona fide purchasers, themselves wholly innocent, and ignorant that the taxes have not been paid. The act, therefore, makes the ground of forfeiture the intent or design of the person in whom is the "possession," or custody," or "control," of the spirits, these being taken disjunctively; and the inquiry into the possession, or custody, or control, is not because possession, custody, or control is material for any purpose, except as the means of identifying the person whose fraudulent intent or design is the cause of forfeiture. The object of the statute is, to secure the payment of the tax, and prevent the accomplishment of meditated evasion and fraud. It should be construed, so far as a fair interpretation of its language will permit, in a manner adapted to effect the purposes of its enactment.

It is argued, that, because the statute imposes a forfeiture, it is to be construed most strictly against the government; and that, therefore, these spirits should be held to have been in the constructive possession, and in

the actual custody, of the government inspector, and not at all in the possession, custody or control of the distillers, who were the owners and proprietors of the distillery warehouse and distillery premises. The statute should be construed reasonably and fairly, and not be made a trap, to deceive or catch the innocent and well-intentioned party, who endeavors to render full obedience to the law. But, I deny that the statute is to be construed strictly, in the sense that if, by any possible construction, it may furnish a chance of escape, and a means of evasion, to the guilty party, who is engaged in endeavors to defraud, with the intent and design which constitutes the ground of forfeiture, such construction shall be given to it. On this subject, Mr. Justice Story, in reviewing the charge to the jury, in a case from the circuit court of the United States for the Eastern district of Pennsylvania (Taylor v. U. S., 3 How. [44 U. S.] 197, 210), says, upon the point that revenue laws are not to be deemed penal laws, in the sense in which that phrase is sometimes used: "In one sense, every law imposing a penalty or forfeiture may be deemed a penal law; in another sense, such laws are often deemed, and truly deserve to be called, remedial. The judge was, therefore, strictly accurate. when he stated, that 'it must not be understood that every law which imposes a penalty is, therefore, legally speaking, a penal law, that is, a law which is to be construed with great strictness in favor of the defendant. Laws enacted for the prevention of fraud, for the suppression of a public wrong, or to effect a public good, are not, in the strict sense, penal acts, although they may inflict a penalty for violating them. It is in this light I view the revenue laws, and I would construe them so as most effectually to accomplish the intention of the legislature in passing them.' The same distinction will be found recognized in the elementary writers (1 Bl. Comm. 88; Bac. Abr. Statute I., 7, 8; Com. Dig. "Parliament R. 13, 19, 20); and it is also abundantly supported by the authorities." In the Case of Cliquot's Champagne, 3 Wall. [70 U. S.] 114. 145, the same rule of construction is declared by Mr. Justice Swayne, in giving the opinion of the court.

The distillery warehouse upon the premises of the distiller is authorized by section 27 of the act of July 13, 1866. That section enacts, that the owners of any distillery shall provide a warehouse, at their own expense, for the storage of spirits of their own manufacture only, or a secure room, in a suitable building to be used as such warehouse, and that the owners of such warehouse shall execute a general bond to the United States, with sureties, to be approved by the collector, in such form and with such conditions as shall be approved by the secretary of the treasury; and that, after the bond has been given, "such warehouse or room, when approved by the secretary of the treasury, * * * is hereby declared to be a bonded-warehouse of the United

States, and shall be used only for the storing of spirits manufactured by the owner * * * of such distillery, and shall be under the custody of the inspector, as hereinafter provided, and shall be kept locked up by the proper officer in charge, at all times, except when he shall be present, and the tax on the spirit stored in such warehouse shall be paid before removal from such warehouse." Section 29 of the same act provides for an inspector for every distillery, to take account of the materials used, and to inspect, gauge, and prove the spirits distilled, and declares that he "shall take charge of the bonded-warehouse established for the distillery in conformity to law, and such warehouse shall be in the joint custody of such inspector and the owner thereof, his agent or superintendent;" and his compensation is required to be paid by the distiller. Other provisions impose penalties for the illegal removal of spirits to any place other than the bonded-warehouse, or from the warehouse, and declare that all spirits found elsewhere than in a bonded-warehouse, not having been removed therefrom according to law, and the tax not having been paid, shall be forfeited to the United States. Here, then, for the protection of the government, to guard against an evasion of the tax upon distilled spirits, is interposed a government official, as a guardian and joint custodian of the warehouse; and this precautionary and participating custody of the warehouse was deemed by the district court to displace the possession, custody, and control of the spirits themselves by the owner, so that spirits in a warehouse could not answer the description in the 48th section, nor be forfeited, however plainly it was proved that the owner intended and was about to sell or remove them in fraud of the revenue laws, and with the design to avoid the payment of the taxes thereon.

The warehouse, in this case, was a part of the distillery premises, in the proprietorship of the claimants, and the spirits in question were their property. The act nowhere in terms provides that the government inspector shall have any possession, custody, or control of the spirits, but only a custody of the warehouse, jointly with the owner. This is giving to the inspector, through his participation in the custody of the warehouse, and by the discharge of his duty to keep the same locked when not personally present, a means of guarding against the illegal removal of spirits, but invests him with no legal possession thereof. Whatever custody or control he has over the spirits is purely incidental, or a consequence of his joint custody of the place where they may happen to be, and he has not, as a legal proposition, a custody of the spirits themselves. In point of law, the owner of the spirits, and the owner of the warehouse wherein they are stored, is in possession of the spirits; and I have no hesitation in saying that he could maintain any action known to the law, adapted to redress an illegal interference with his possession. Could it be

successfully, or for a moment, contended, that the owner, in such case, could not, in his own sole name, maintain trover against any one who should wrongfully remove the spirits, or replevin in the cepit, or, under the Revised Statutes of New York, in the detinet, or trespass de bonis asportatis? I apprehend not. All that the statute has done is, to throw around his ownership, possession, custody and control a surveillance, and a joint custody of the warehouse, as an obstacle to the accomplishment of any fraud the owner may intend and desire to effect. If the participating custody of the warehouse had by the officer were to be deemed, by construction, to include the like joint custody of the spirits, there would still be possession, custody and control in the owner, though not sole possession, custody and control; and the proposition would then be analogous to that employed as a familiar rule of pleading at the common law, by which, where a joint promisor is sued in assumpsit without joining his co-promisor, and he simply pleads non-assumpsit, he cannot, under that plea, say that he did not promise and so defeat the action. The law says it is his promise, though not his sole promise. So, here, in my judgment, the owner of both warehouse and spirits has possession and custody and control, within the meaning of the act in question, even though, for the purpose of guardianship over the rights and interests of the government in the tax due thereon, the inspector be deemed to have a joint custody with him. As already observed, the section in question has respect to the intentions, purposes and designs of the party in the possession, custody or control. If, in law, such party have either, then his intentions, purposes and designs become the ground of the forfeiture, entirely irrespective of the difficulties which may lie in the way of accomplishing his intention. In addition to other precautions devised by the government to protect against such accomplishment, there is provided this additional security against any attempt to evade those precautions or render them nugatory

Once more, the theory of the charge on this trial was, that the government official had the possession, custody or control of these spirits, within the meaning of the statute, and not the owner. If that be so, if his guardianship excluded the possession, and the custody, and the control of the owner, as those terms are used in the statute, does it not follow that the conduct of the officer, without the knowledge, assent or complicity of the owner in any form, directly or indirectly, might subject the spirits to forfeiture, according to the express language of the statute? Suppose it could be established, by clear proof, that the officer had bargained for a fraudulent removal or sale of the spirits, or both, had arranged for and provided the vehicles for transportation, had, in the night season, availing himself of the possession of his key to the warehouse, visited the premises, with a view to such removal,

and had even laid hands upon the spirits and begun the work—all this as well in fraud of the owner, as, also, in fraud of the revenue laws, ard to prevent the collection of any tax thereon—could it then be said, that the collector might seize the spirits, under this 48th section, and that, for these intentions, purposes and designs of the officer, the spirits could be condemned as forfeited to the United States? In my judgment, this could not be claimed. The officer has no legal possession, custody or control of the spirits, under that section; and owners of distilled spirits are not subjected to any such hazard of forfeiture by reason of the misconduct of the government official. If not, then there is possession, custody and control in the owner, within the just meaning of the law. Else, this anomalous condition results—there are spirits in the possession of no one whose purpose to dispose thereof and remove the same in fraud of the revenue laws, and with the design to avoid the payment of the tax, can subject them to forfeiture. The owner of the warehouse and spirits may place them in the warehouse for the purpose of selling and removing them secretly in fraud of the laws, and with the design, by such removal or sale, to avoid payment of the tax. That purpose and design may be shown to have begun with the very beginning of the manufacture, and to have constituted its chief motive, and to have accompanied the goods to their deposit. The proofs may establish that all preliminary negotiations for sale and removal, and arrangements therefor, are completed, and secret and forcible entry into the warehouse is about to be made, and yet, according to the doctrine contended for, such joint custody of the warehouse has been given to the government inspector. that no forfeiture of the spirits can be adjudged. Other considerations might be suggested, founded upon other provisions of the act regarding fraudulent removals, and other illustrations might be given, but I think enough has been said to show, that the ruling on the trial (where it could not receive the attention necessary to a deliberate examination of the whole subject), was erroneous.

Such a construction of the act is at war with its object. It defeats its purpose to anticipate the accomplishment of meditated frauds, difficult of detection and punishment when once carried into execution. It gives to the guardianship of the officer, which is interposed as a further security against fraud, an effect to prevent the efficiency of the law. It makes a merely consequential and physical control of the spirits, resulting from the officer's joint custody of the warehouse, the displacement of the legal possession of the owner of the spirits, himself in the like joint custody of the warehouse. It enables the fraudulent party to 'defeat the purposes of the enactment, and avoid the penalty, by a narrow construction of the terms of the act, not called for by their fair, natural and legal meaning. It is repugnant to the rule above adverted to,

which requires us to construe the statute so as most effectually to accomplish the intention of the legislature in passing it.

It is a significant fact, and not unworthy of consideration, that the 48th section of the act of 1864 further provides, that all personal property whatsoever in the place or building, or within any yard or enclosure where such articles shall be found, shall also be forfeited. The jury have here found the forfeiture of articles found in the possession of the claimants, and upon the distillery premises, with the unlawful intent and purpose specified in the act. Such finding brought all other personal property whatsoever in the place or building, or within the yard or enclosure where such articles were found, into the same condemnation, by the express terms of the act, and thereupon a question arises. not considered on the trial, and not adverted to on the argument of the writ of error— Were not the spirits in the warehouse which was on the distillery premises. included in the forfeiture. under the provisions just referred to, independently of the question which I have above considered? This question not being in view of counsel on the trial or on the argument, and I having reached the conclusion above stated on the other point, I have not deemed it necessary to consider it further; but the terms, "all personal property whatsoever in the place or building, or within the yard or enclosure," are very comprehensive.

The judgment must be reversed. and a new trial ordered, as to the thirty-six barrels of high wines and the seven barrels of grape brandy, in question.