UNITED STATES v. DE GOER.[1]

(*District Court, S. D. New York.* February 21, 1889.)

1. ABATEMENT AND REVIVAL — FORFEITURES UNDER REVENUE LAWS — STATE STATUTES.
   Actions for forfeitures under the revenue laws arise solely under the statutes of the United States, and are in no way subject to state legislation; and the question of the survival of such actions is not affected by the statutes of the state where the cause of action arose.

2. SAME—REVENUE CASES—COMMON-LAW RULE.
   Section 955, Rev. St. U. S., refers to the course of procedure only where actions survive, and, in the absence of any United States statute prescribing what actions do survive, the question in revenue cases must be determined by the common law, by which all such actions abate upon the death of the wrong-doer, except only where the acts are divisible, and the wrong-doer's estate has derived benefit from the tort.

3. SAME—REVENUE CASES—DEATH OF PARTY.
   Suit having been brought in 1862 for forfeiture of the value of an importation of gloves for fraudulent under-valuation, under section 66 of the act of 1799, (1 St. at Large, 677,) and, upon defendant's default, an assessment of damages being made, and a judgment entered after his death, which was set aside on motion as irregular, upon *scire facias* to revive the action against his administrator, *held,* that the act of 1799, though in part remedial, was mainly punitive, and in this case highly penal; and the action for forfeiture, not being divisible, as respects the actual pecuniary loss to the government, was subject to the general rule, and abated by the defendant's death.

*Scire Facias* to Revive Action against Administrator.

In 1861 and 1862 the defendant made five importations of gloves to this port, which were entered by him at the custom-house, and received for consumption. In August, 1862, a suit was commenced against him for the sum of $33,644.60, their value, alleged to be forfeited to the government under section 66 of the act of 1799 (1 St. at Large, 677) for fraudulent under-valuation. Defendant appeared, but no answer was ever filed, and nothing further was done in the suit until after the death of the defendant, in March, 1877. In October, 1877, the United States attorney, in ignorance of the defendant's death, and upon affidavit of his default, assessed the damages, and entered judgment for $68,229.55. On August 7, 1888, upon motion of the defendant's administrator, the judgment was set aside and vacated, as being irregularly entered after the defendant's death. A counter-motion for leave to enter the judgment *nunc pro tunc*, as before his death, was denied. A writ of *scire facias* was thereupon issued, directing the administrator to show cause why the suit should not be revived against him as administrator of the deceased defendant.

*Stephen A. Walker*, U. S. Atty., and *Abram J. Rose*, Asst. U. S. Atty. *Griswold, Deuel & Griswold,* for the administrator.

BROWN, J., (*after stating the facts as above.*) This action is for the forfeiture of the value of gloves imported by the deceased, for alleged fraud-

[1] Reported by Edward G. Benedict, Esq., of the New York bar.

ulent under-valuation. Section 66 of the act of 1799 (1 St. at Large, 677) provides that if goods imported and entered are not "invoiced according to the actual cost thereof, * * * with design to evade the duties thereupon, or any part thereof, all such goods, * * * or the value thereof, to be recovered of the person making entry, shall be forfeited." By section 91 of the same act (page 697) the amount of the forfeiture so recovered, after deducting costs and charges, is to be distributed, one-half to the use of the United States, the other half to the collector, naval officer, surveyor, and informer. The declaration, filed October 4, 1862, alleges the importation and entry of the gloves by the defendant; that the goods in the several invoices thereof "were not, nor was any part thereof, invoiced according to the actual cost thereof, but at a much less price, with the design on the defendant's part to evade some part of the duties due and payable on such goods;" and that the goods were worth in the aggregate $33,644.60, for which judgment was demanded.

The action manifestly belongs to the general class of actions for the recovery of penalties and forfeitures. As such, under the early maxim of the common law, it would die with the person,—*actio personalis moritur cum persona.* The statute of 4 Edw. III., c. 7, called the statute *de bonis asportatis in vita testatoris,* greatly limited the effect of this maxim, and gave actions to executors for trespass to their testators' goods and chattels. In many, if not all, of the states of the United States, there are also additional statutes that very much limit the application of the old common-law rule. By the statute of Massachusetts actions survive for damage done to the real or personal estate; by the statute of New York (2 Rev. St. p. *448, § 1) actions survive "for wrongs done to the property, rights, or interests of another, for which an action might be maintained against a wrong-doer." Under these statutes it is held that negligent injuries to a wife, who was a passenger on the cars, which caused expense and loss of her services, was a wrong to the husband's rights and interests, which survived, (*Cregin* v. *Railroad Co.,* 75 N. Y. 192; see, also, *Norton* v. *Sewall,* 106 Mass. 143;) so, an action for fraud by the grantor on the sale of land, (*Haight* v. *Hayt,* 19 N. Y. 464; *Cheney* v. *Gleason,* 125 Mass. 166;) but actions for penalties not based upon the theory of affording compensation to the injured parties for damages sustained, do not survive, (*Stokes* v. *Stickney,* 96 N. Y. 323;) nor for special damage through a libel, (*Cummings* v. *Bird,* 115 Mass. 346;) nor an action for breach of promise of marriage, (*Wade* v. *Kalbfleisch,* 58 N. Y. 282; see 22 Amer. Law Reg. 353, 425.)

There is no statute of the United States providing what causes of action shall or shall not survive. Section 955, Rev. St. U. S., merely provides for the course of procedure "in case the cause of action survives." The question here is to be determined, therefore, according to the nature of the cause of action, and the law that governs it. In those causes of action that arise under the state laws, or are subject to their operation, the law of the state will determine the question; in other cases it must be determined by the principles of the common law, as recognized and adminis-

tered in the federal courts. The case of *Hatfield* v. *Bushnell*, 1 Blatchf. 393, was a case of the former class, where the action was ejectment to recover lands claimed by an alien; and, as it arose in Vermont, and was subject to the law of that state, it was held to survive, in accordance with the provisions of the state law. But causes of action arising out of the revenue laws of the United States, or, like the present, founded solely upon federal statutes, are manifestly not subject to state legislation. The question is not one of the form or mode of procedure in enforcing a right, but of the existence of the right itself, after the defendant's death. Upon these grounds it was held in the case of *Schreiber* v. *Sharpless*, 17 Fed. Rep. 589, 110 U. S. 76, 3 Sup. Ct. Rep. 423, which was an action brought under section 4965 of the Revised Statutes to recover certain sums "forfeited" by defendant for copying and printing plaintiff's copyright photograph, that the statute of Pennsylvania, where the cause of action arose, had no application; and that under the federal law the cause of action abated by the defendant's death, and could not be revived. The revival of the action in this case cannot, therefore, be based upon the provisions of the statute of New York.

Independently of the state statutes, a distinction is recognized at common law between cases where the wrong-doer derives some benefit by his wrong from the injured person's estate, and cases unaccompanied by such benefits or injury to property interests. Thus, in *Hambly* v. *Trott*, 1 Cowp. 376, Lord MANSFIELD says:

"Where, besides the crime, property is acquired which benefits the testator, there an action for the value of the property shall survive against the exector. * * * So far as the tort goes, an executor shall not be liable; and therefore it is that all public and all private crimes die with the offender, and the executor is not chargeable: but so far as the act of the offender is beneficial, his assets ought to be answerable, and his executor shall therefore be charged." *U. S.* v. *Daniel*, 6 How. 11, 13; *Jones* v. *Vanzandt*, 4 McLean, 604.

In some cases the punishment of offenses is divided by reserving to the injured person his right of action for damages for the actual injury to him, or by forfeiting a specific sum to be paid to him by way of civil damage for injury to his property rights, in addition to other punishment for the public offense; as in the punishments provided by the laws of 1793 and 1850 for aiding in the escape of fugitive slaves. See *Norris* v. *Crocker*, 13 How. 429, 438, 440. In such cases, where compensation for injury to property is either reserved or specifically provided for, the cause of action, as to that part, might possibly be held to survive.

Statutes punishing fraud on the revenue are in part remedial, not simply and purely penal statutes; and for that reason they are not construed with the strictness of penal statutes. In *Taylor* v. *U. S.*, 3 How. 197, 201, STORY, J., says:

"Laws enacted for the prevention of fraud, for the suppression of a public wrong, or to effect a public good, are not, in the strict sense, penal acts, although they may inflict a penalty for violating them. It is in this light I view the revenue laws, and I would construe them so as most effectually to accomplish the intention of the legislature in passing them."

See, also, *U. S.* v. *Thirty-Six Barrels of High Wines*, 7 Blatchf. 459. In the case of *Stockwell* v. *U. S.*, 13 Wall. 531, the second section of the act of March 3, 1823, which condemned persons convicted "to forfeit and pay a sum double the amount of the value of the goods concealed," etc., was held so entirely remedial as not to be repealed by the act of July, 1866. In the subsequent case of *U. S.* v. *Claflin*, 97 U. S. 546, however, it was considered that both statutes were alike designed to be punitive as well as remedial.

A consideration of the numerous provisions of the statutes, from the act of 1799 downward, forfeiting goods or their value, or specific sums, for offenses affecting the revenue, shows that these statutes, as a class, while remedial in part, are mostly highly penal. Generally the amount of the forfeiture is out of all proportion to the pecuniary loss incurred, or likely to be incurred, by the government in the particular case. A whole invoice, as in this instance, (until the act of 1874,) was liable to forfeiture for a false statement in a single item. The heavy forfeitures imposed are designed more to prevent the commission of offenses than to afford mere compensation or indemnity to the government, or to the injured party. In the case of *Stockwell* v. *U. S.*, *supra*, the goods, under the act of 1823, became the property of the government. By the concealment of the goods, the government would lose its property. Much emphasis was laid upon this circumstance. In the present case the forfeiture was in the alternative, viz., "of the goods or their value," and in such cases there is no forfeiture, and hence no property in the government, unless and until the government makes its election to pursue the goods, which in this case it did not do. See cases cited in *U. S.* v. *Auffmordt*, 122 U. S. 209, 7 Sup. Ct. Rep. 1182, 19 Fed. Rep. 901. No division of a gross sum forfeited can be made, so as to distinguish the government's actual loss, if any, from the satisfaction for the public offense. The recovery must be for the whole value of the goods or nothing, although the excess over the entered value may be but a small percentage. No precedent has been shown for reviving actions upon forfeitures that are mainly penal, though to some extent remedial. The instances of the death of defendants in such cases must have been numerous; and the absence of any precedent for revival of such actions is of no small weight as evidence that no such right in this class of cases has ever been supposed to exist. Besides the customs and internal revenue statutes, there are many provisions for forfeitures in the laws relating to navigation and to patents, in some of which the sums forfeited have manifest reference, in part, to compensation to persons whose pecuniary rights have been violated, to the profit of the wrong-doer. The case of *Schreiber* v. *Sharpless*, above cited was of precisely this kind. Section 4965 forfeited certain sums for every copyrighted photograph, etc., which should be illegally manufactured or sold, etc., one-half of the sum forfeited "to go to the proprietor, and the other half to the use of the United States." There can be no doubt that this provision for "the proprietor" was by that statute intended in part as compensation or indemnity to him, quite as much as the forfeiture imposed by the revenue laws was in part de-

signed for indemnity to the United States. The decision of the supreme court, therefore, in that case, seems to me decisive of every legal question involved in the present case, and the writ must therefore be quashed.