# Bucher *versus* The Commonwealth.

1. A penal statute must be construed strictly, and should not be extended beyond the evident intention of the legislature as expressed on its face.

2. The words "other persons" following in a statute the words "warehousemen" and "wharfinger" must be understood to refer to other persons ejusdem generis, viz. those who are engaged in a like business or who connect the business of warehouseman, etc. with some other pursuit.

3. A warehouseman within the contemplation of the Act of September 24th 1866 (P. L. 1363), is one who receives and stores goods as a business for a compensation or profit.

4. A. was engaged in the business of buying and selling grain, coal and lumber. B. delivered grain to A. and received a receipt in this form : "Received of B. three hundred and sixty-six 48·56 bus. corn on store." A. received no compensation for storage and the understanding between the parties was that the corn was not to be removed unless A. should decline to become the purchaser. *Held*, that A., having used the grain, must be regarded as having exercised the option thus afforded and be treated as a purchaser.

5. The facts being as above stated, A. was indicted under the Act of September 24, 1866 (P. L. 1363), for parting with the grain so delivered to him without requiring the surrender of the receipt he had given for it:
*Held*, (1.) That the court should have instructed the jury, that unless the grain was received as a bailment to be returned upon demand the defendant should not be convicted.
(2.) That it was competent for the defendant to show that the prosecutor for a number of years had delivered large amounts of grain to the defendant, and that such grain was always bought by the defendant with the understanding that he should pay the price ruling when the prosecutor should call for a settlement.

May 11th 1883. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY and GREEN, JJ. STERRETT and CLARK, JJ., absent.

ERROR to the Court of Quarter Sessions of *Cumberland county :* Of January Term 1883, No. 144.

This was an indictment against R. A. Bucher under the Act of September 24th 1866 (P. L. 1866, p. 1363), charging him as a warehouseman, with transferring and removing beyond his immediate control, grain, for which he had given a receipt, without requiring its return. Plea, not guilty.

On the trial, before ROWE, P. J., the following facts appeared : R. A. Bucher, the defendant, had been for over twenty years engaged in the business of buying and selling grain and produce at Kingston, Cumberland county. He sometimes purchased grain from his customers at the market rates when the

[Bucher v. Commonwealth.]

grain was delivered, and sometimes received it with the understanding that he would pay for it the price ruling when his vendor demanded payment. In the latter case he issued receipts for the grain which stated that it was received "on store." These receipts were issued indiscriminately as the grain was received, and no charge was made for its storage before actual purchase.

In May 1881, Bucher offered to buy corn of one Hettrick. The latter testified that, in answer to Bucher's question if he had corn, he said, "I told him I had, but it didn't suit me to thrash it. I didn't know whether it would suit the tenant to thrash that on the lower farm or not; if it would suit him, I would put that on store. I told him to see Mr. Kost, and if, it suited him to thrash it, I was satisfied to let him have it on store."

The testimony of Hettrick and of the defendant (a witness in his own behalf), differed as to the precise terms of their agreement, the former stating that he deposited the grain with the intention of removing it, if he could not sell it to Mr. Bucher; while the latter said that all his transactions were purchases of grain, either at a special price or at a price to be determined at some subsequent time, and that he never charged anything for storage as he considered the grain bought. In pursuance of their agreement, Hettrick delivered corn to Bucher, and received the following receipt:

"Kingston Station, Pa., May 14th 1881.

Received of J. Hettrick, per Kost, three hundred and sixty-six 48-56 bus. corn on store.        R. A. BUCHER."

Bucher immediately shipped the corn so received. On February 8th 1882, he made an assignment for the benefit of creditors, at which time there was not so much corn remaining in his store as the receipt called for. Hettrick did not demand the corn from Bucher until after the assignment, did not dispose of or negotiate the receipt, never paid anything for storage, and himself testified that there was no agreement for payment on that account.

The defendant's counsel offered to ask defendant as to the manner in which the prior dealings were conducted between Jesse Hettrick and himself, and to show thereby that Hettrick, for a number of years, delivered him large amounts of grain, and that such grain was always bought by defendant, but very frequently the price not determined upon; but it was bought with the understanding that defendant should pay the price ruling when Hettrick should call for settlement, said grain having been bought in a manner similar to the arrangement about the corn in question.

7 OUTERBRIDGE—34

Objected to: (1) The defendant has detailed an alleged express contract as to the grain for which this receipt was given. Prior dealings cannot explain the terms of this contract. (2) There is a written contract as to the corn which cannot be explained by other general dealings. Objection sustained. Exception. (Fifth assignment of error.) The defendant requested the court to charge. (3) Unless the corn was received as a bailment, that is, with the understanding that the property remained in Hettrick, and was to be returned to him when demanded, the jury ought not to convict the defendant.

Answer. " I decline to affirm that point." Exception. (Third assignment of error.)

The court charged, inter alia, as follows : " The indictment charges the defendant as a warehouseman, and we have first to inquire who is a warehouseman. Is he one who keeps a warehouse, a house where goods are received and stored, or is he one who receives goods into his custody for hire ? I think that every one is a warehouseman within the meaning of the Act, who keeps a warehouse, and that it is not necessary to make him a warehouseman that he should charge, receive compensation or hire for his care and custody of the goods. The Act has regard to a receipt given for goods stored or deposited. The design is to make such a receipt negotiable, and to secure it by the goods themselves. Whenever goods are so deposited they may be the means of credit, and so " other persons " may issue them, because the Act says, " warehouseman, wharfinger, or other person." The negotiability of such a receipt ought not to depend on what does not appear on the face of the receipt itself—for instance, on whether the keeper of the warehouse takes hire for the custody of the goods or not. The negotiability of the paper ought not to depend on that extraneous circumstance, but ought, as far as possible, to depend on the contents and form of the receipt itself. Such a construction as contended for by the defendant would make the taking of negotiable paper of this kind a very precarious business, and it would largely tend to defeat the object of this Act of Assembly, which was to enable persons to obtain credit by means of goods which they had in store and on deposit.

[" In the next place, what is a warehouse receipt ? The Act defines it. It is a receipt given for. any goods, wares, grain, produce, etc., stored or deposited with any warehouseman, wharfinger, or other person in this state. The receipt in evidence of May 14th 1881, for 366 bushels and 48 pounds of corn on store, signed R. A. Bucher, is a warehouse receipt within the meaning of this Act. That receipt has been read in your hearing. It is as follows : ' Kingston station, Pa., May 14th

1881. Received of J. Hettrick, per Kost, three hundred and sixty-six 48-56 bus. corn on store. R. A. Bucher.'

"Mr. Bucher told you that he signed it. It seems that he was the keeper and lessee of a warehouse at Kingston station, and I instruct you that this is a warehouse receipt within the meaning of the law.

"Now, the Commonwealth has shown that the defendant was lessee and keeper of a warehouse at Kingston station; that Jesse Hettrick sent this corn in the receipt specified to defendant's warehouse; that it was received by the defendant there, and that he gave this receipt. Further, that the defendant forthwith sold and shipped the corn to the East, and out of his control, and that he did this while this receipt was outstanding and not returned to him. If these things be so, and there is no dispute or contest about these facts, then the defendant is guilty on the first count of this indictment, if the corn was not sold to him; but if the corn was sold to him at the time of delivery, he cannot be convicted, because there is no count on the second section for giving a warehouse receipt when the goods were not actually in store; but we are trying the offence prescribed against in the fourth section, that of removing goods in store for which a receipt has been given, and has not been returned. The indictment expressly avers that this corn was received into store. What, therefore, we are trying is this: Whether or not this defendant sold and shipped corn which he had received into store, for which he had given a warehouse receipt, before the return of that receipt. We are not trying any other charge, or any other offense, and you will confine your attention strictly to the offense which the Commonwealth has thought proper to charge against this defendant. He is here to meet that charge, not to meet any other charge, and we are trying the issue which the Commonwealth has made with this defendant. The case then pivots on this question: Was the corn sold to the defendant or not? If he bought it and the general property in the corn passed to him as purchaser on its delivery, he cannot be convicted on this indictment. I think that I have been sufficiently explicit, and that there can be no misunderstanding of the instructions of the court. I don't say that the defendant might not have been convicted, though this corn were sold to him. What might have been we have nothing to do with. I say that the defendant cannot be convicted on this indictment as it is drawn, if there was a sale of the corn to him; and if there was not a sale of the corn to him, and if the corn was deposited on store in that warehouse to be sold to him at some future time, then, inasmuch as the other facts are not disputed but are conceded, he would be guilty on this indictment, that is to say, on the first count of this indictment."]

[Bucher v. Commonwealth.]

Exception. (First assignment of error.)

Verdict, guilty, and sentence accordingly; whereupon defendant took this writ, assigning for error, inter alia, the rulings of the court in rejecting his offers of evidence, the refusal of defendant's points, and that portion of the general charge above quoted within brackets.

*W. F. Sadler* and *Stuart & Stuart*, for the plaintiff in error.—A warehouseman must be a bailee. A warehouseman is a person who receives goods and merchandise for hire : Bouvier Law Dict. "A person who makes it his business to receive merchandise in quantities, and keep it in store for the owner until wanted, at a reasonable compensation :" Abbott's Law Dict. Edwards calls warehousemen " bailees who carry on a business of a public nature and receive goods generally from all persons indifferent for storage." In Pennsylvania any limitation that removes from a transaction any characteristic of a bailment in its strictest sense, translates such transaction from the category of a bailment to that of a sale or gift. Unless, therefore, the transaction between Bucher and Hettrick was strictly a bailment, there should have been no conviction. Where there is an option to purchase, the transaction is not a bailment but a sale, and carries with it loss by accident : Chase *v.* Washburn, 1 Ohio St. 244 ; Ewing *v.* French, 1 Blackford 353 ; Buswell *v.* Bicknell, 17 Me. 346 ; Holbrook *v.* Armstrong, 10 Me. 31. In some of the states the cases go still further. Thus, in Ives *v.* Hartley, 51 Ill. 520, it is said, that a receipt, given by a warehouseman in these terms : " Received of H. 134 bushels of wheat left in store, to take the market price when he sees fit to sell," imports a sale. So Lonergan *v.* Stewart, 55 Ill. 45. The evidence of prior dealings between the defendant and Hettrick should have been admitted : Lelar *v.* Brown, 3 Harris 215 ; Harsh *v.* North, 4 Wright 241.

*S. Hepburn, Jr.* (with him *J. W. Wetzel*, District Attorney), for the Commonwealth, defendant in error.—The offence charged is clearly defined by the statute and the meaning and intention of the party who commits it cannot relieve him : Gardner *v.* The People, 62 N. Y. 299 ; Halsted *v.* The State, 12 Vroom 552. But Bucher was in fact a warehouseman, as all men engaged in business, such as his, are warehousemen in the technical sense of the word. They take grain on store for a consideration, which well repays them for waiving the ordinary storage charges. By offering storage free to farmers, they draw into their warehouses grain long before it would otherwise come; and thus they secure the option to buy—the first chance, for which all active business men are willing to pay : and they

[Bucher *v.* Commonwealth.]

advertise in the most effective way their " warehouses." Their places of business are never spoken of in the community except as " warehouses." Custom can no more alter the terms of a special contract than it can prevail against the positive commands of a statute.

Mr. Justice GORDON delivered the opinion of the court, October 1st 1883.

No exception can be taken to the charge of the learned judge of the court below as a critical exposition of the Act of September 24th 1866 (P. L. 1866, 1363.) We have no doubt that he was strictly correct in saying that the whole object of the Act was to protect the transferee of what is technically known as warehouse receipts. This kind of paper, together with bills of lading and receipts for goods in transit, are, by this Act, made negotiable, hence for the protection of those persons to whom these kinds of securities are passed, it is made a penal offence for any " warehouseman, wharfinger, or other person " to issue any such vouchers for goods, wares. &c., unless he shall have actually received them into store. Neither is such person or persons permitted to sell or incumber, " ship or transfer, or in any manner remove beyond his control, any goods, wares, merchandise, petroleum, grain, flour, or other produce or commodity, for which a receipt shall have been given by him as aforesaid, whether received for storage, shipping, grinding, manufacturing or other purposes, without the return of such receipt." Nor is the learned judge less correct in his definition of the intent of the Act when he states, that since the object of the statute is to protect advances made on the faith of the fact that the goods described in the receipt are actually in store, as may be stated in that paper, and not for the protection of the depositor, it follows, that the consent of the person storing the goods to the shipping of them without a return of the receipt does not relieve the warehouseman. He further well says, that the depositor has no right to consent to a violation of the statute which was not made for his benefit, but for the security of the holder or transferee of the warehouse receipt; that the agreement of the bailor and bailee cannot so modify the Act as to make lawful the shipping of the property whilst such receipt is outstanding.

But conceding this to be a true exposition of the law, as it undoubtedly is, nevertheless it is clearly apparent that the law is dealing with that class of securities which it has made negotiable, and with none others. Moreover, as these vouchers, in the nature of things, must be like many others which are not negotiable, their character must depend altogether upon the business of the person who issues them. That person must be

a warehouseman, or one who is engaged in a like business, for it will not do to say that the receipt of a farmer who takes a horse to depasture, or a mechanic who takes a wagon to mend, is negotiable paper under the Act of 1866, and that the farmer could not return the horse, or the mechanic the wagon, without first lifting that receipt. Penal statutes must be construed strictly, and should not be extended beyond the evident intention of the legislature as expressed upon their face. We must have regard to whom and to what the Act is intended to refer, and to nothing else. It expressly indicates "warehousemen, wharfingers and other persons," and by "other persons," we must of course understand those who are engaged in a like business, or who may connect the business of warehouseman or wharfinger with some other pursuit, such as shipping, grinding or manufacturing. So the goods stored or deposited must be so stored or deposited, with the intention that they shall be returned without change or substitution, or in a manufactured state, to the owner or his transferee. Such being the case, the depositee is strictly a bailee, hence the defendant's third point should have been affirmed. Unless the corn was received as a bailment, that is, with the understanding that the property was to remain in Hettrick, and to be returned to him when demanded, the jury ought not to have been allowed to convict the defendant. Thus, in the application of the law and facts to the case in hand, we are brought to the question, first, what was Bucher's business? Was he a warehouseman? Prima facie, we would say, no. A warehouseman is one who receives and stores goods as a business for a compensation or profit. But Bucher made no charges, neither was he a shipper, miller or manufacturer. If then he did not receive this grain, merely for the purpose of storage, the second question is, for what purpose did he receive it? The answer from the evidence is, either for his own use as an immediate purchaser, or for future sale on account of the depositor, and certainly not for the purpose of holding it in specie until called for by the bailor or his transferee. As conclusive evidence of this we need go no farther than the testimony of Hettrick himself. He says he never paid anything for storage, that he did not receive the receipt for the purpose of negotiation, and that he never intended to remove the corn unless he could not sell it to Bucher. If this means anything, it means that Bucher had the option to purchase, and if he used the corn he must be regarded as having exercised that option, and therefore be treated as a purchaser.

Moreover, this kind of dealing had been going on for years, and certainly Hettrick, and everybody else in that neighborhood, knew the character of Bucher's business, hence the offer

[Bucher *v.* Commonwealth.]

of evidence on part of the defendant, as contained in the eighth assignment of error, ought to have been admitted. The court was not trying an action on a contract, but a criminal charge, under which the character of the business was of prime importance as giving character to the receipt issued by the defendant. In the court below much stress was laid on the form of this paper, though that particular had, in and of itself, but little significance. The Act of Assembly prescribes no form. If the receipt is that of a warehouseman, it is negotiable without regard to its form, and to destroy that negotiability notice to that effect must appear upon its face. On the other hand, unless it is in fact or effect a warehouse receipt, no form will make it such. The Act was designed to meet a special business —a business that enters largely into the commerce of the country, and it was not designed to affect commission merchants or any others who by contract, express or implied, have the right to sell or use the goods committed to their care. A receipt for such goods forms but part of the contract from which it originates, and from its very nature cannot become negotiable. Nor can we regard the case in hand as otherwise than remarkable in this, that Bucher and his customers should have gone on with this kind of dealing for a period of eight or nine years, they delivering grain to him, he disposing of it on his own contracts, and settling with them from time to time at the market price, and that only after his failure it should be discovered that he was in fact a warehouseman and had no right thus to deal with the produce committed to his care. We must confess that we cannot comprehend this manner of treating a subject of so much gravity, and that to us it looks very much like an after-thought which has unwittingly been made effective in the court below, for the punishment of an insolvent debtor through a perversion of the Act of 1866.

> Judgment reversed, and it is ordered that the record be remanded to the court below for further proceedings.