# National Union Bank of Reading *v.* Shearer, Appellant.

*Bailment—Warehouseman—Warehouse receipts—Delivery—Negotiability.*

1. A warehouseman is one who receives and stores goods as a business for compensation or profit.

2. The Act of September 24, 1866, P. L. (1867) 1363, making warehouse receipts negotiable does not define a warehouseman, and there is nothing in it requiring him to hold himself out to the general public as such.

3. Where a paper shows on its face that the signer thereof has in his possession designated goods of another on storage, and that he has obligated himself to deliver such goods to a person named in the paper, such a paper is a warehouse receipt within the meaning of the Act of September 24, 1866, P. L. (1867) 1363, and is negotiable; and its mere delivery without indorsement will carry title to the goods, if such was the intention of the parties.

Argued March 2, 1908. Appeal, No. 371, Jan. T., 1907, by defendant, from judgment of C. P. Berks Co., May T., 1905, No. 101, on verdict for plaintiff in case of National Union Bank of Reading v. James Y. Shearer. Before MITCHELL, C. J., FELL, BROWN, ELKIN and STEWART, JJ. Affirmed.

Replevin for a lot of tobacco. Before ENDLICH, P. J.

At the trial it appeared that the tobacco was stored in a building constructed by the defendant and intended to be rented by him for use as a cigar factory. While waiting for a tenant he took on storage therein a quantity of tobacco owned by J. L. and M. F. Greene, and issued to them a large number of certificates of which the following is a sample:

Reading, Pa., May 18, 1903

| | Mark | Number | Gross | Tare | Net | |
|---|---|---|---|---|---|---|
| I promise to deliver to J. L. & M. F. Greene, | | 3 | 487 | 89 | | |
| One case of Seed Loaf Tobacco included in receipt of this date. Marks, Nos. and weight as per margin. | | | | | | |

JAMES Y. SHEARER.

S

The Greenes delivered these certificates without indorsement to the plaintiff as collateral for a loan. The court submitted to the jury the question whether the defendant was a warehouseman.

Verdict and judgment for plaintiff for $2,621.66.

On rule for a new trial and for judgment n. o. v. ENDLICH, P. J., filed the following opinion:

This cause has been twice submitted to a jury upon substantially the same questions and under substantially the same evidence. In each instance the verdict has been adverse to the defendant. Viewed as it must be, see Mintzer v. Greenough, 192 Pa. 137, 144; Smith v. Shields, 194 Pa. 635, in the light of the charge the finding of the jury at the last trial establishes that defendant was a warehouseman; that the papers pledged to plaintiff were issued by him as such, i. e., warehouse receipts intended to represent cases of tobacco stored with him as a warehouseman; that they were delivered to plaintiff with intent thereby to transfer to it the property represented by them; that they were so accepted by the plaintiff as security for money advanced by it to the party to whom they were issued and in part still owing; and that the value of the tobacco described in them and withheld by defendant from the plaintiff was so and so much, being less than the amount remaining unpaid upon the loan.

1. The first contention on defendant's part is that there can be no recovery by plaintiff because its declaration avers a pledge to it of 125 cases of tobacco to secure an advance of $20.00 per case, or a total of $2,500, and a failure to pay that debt—whereas the proofs show a loan of $8,400 upon the security of 125 cases at the rate of $20.00 per case, together with other collateral, and a reduction of the initial debt by partial payments, etc., to $2,500. It may be that a statement of plaintiff's claim in the latter form would have been more strictly in accord with the letter and intent of the Act of April 19, 1901, P. L. 88, and the principles applicable to the procedure under it indicated in the opinion filed in this case on November 24, 1906. But the variance seems to be without

any material significance whatever. For the purposes of this action, there is no substantial difference between saying that 125 cases of tobacco were accepted as a pledge for an advance of $20.00 per case "or" (meaning, of course, "that is to say") an advance of $2,500 which remains unpaid, and saying that they were accepted at the rate of $20.00 per case as security to the extent of $2,500 for an advance of $8,400 upon that and other collateral, and that a balance thereof of $2,500 provided for by this pledge remains unpaid. Under either form of statement the essential averment is the fact of a pledge of the entire quantity of tobacco as security for $2,500 advanced, which (aside from certain other questions raised) is conceded to be in accord with the evidence. Nor for this reason is there any pertinence in the suggestion that upon an allegation of a pledge of so and so many cases for an advance of $20.00 per case the plaintiff's recovery must be restricted to a sum not exceeding that amount upon each individual case worth that much or more, and to the actual value of each worth less—a rule whose application here would reduce the verdict by something over $200.

2. The definition of "warehouseman" given to the jury was that which is approved in Bucher v. Com., 103 Pa. 528, and Bank v. Jagode, 186 Pa. 556, and agrees with that adopted by the warehouse receipts law proposed by the commissioners on uniform state laws, in sec. 58. The defendant now seeks to import into it an element not found in it. He insists that, in order to be a warehouseman a man must not only be engaged, but also hold himself out to the general public as engaged in the business of storing goods for profit. Such for certain purposes seems to be the rule in Wisconsin: Shepardson v. Cary, 29 Wis. 34; Gailfus v. Corrigan, 95 Wis. 651; Security Warehousing Co. v. Hand, 143 Fed. Repr. 32. But that is because the statute of that state associates "warehouseman" with common carriers and others whose business involves a public profession and is therefore to be deemed construable as ejusdem generis with such. In other states the governing statutes provide for and refer to a class of warehousemen constituted public warehousemen, and the de-

cisions proceed thereunder. Our statute does not do so and has no similar sound. It speaks of "warehouseman, wharfinger or other person." Under the rule, noscitur a sociis, each of these terms takes its complexion from the others. But a wharfinger is simply "one who keeps a wharf for receiving goods for hire:" Rodgers v. Stophel, 32 Pa. 111. That that was his business may well be proved as against him by showing that he so held it out to the public generally and actually received and charged for whatever goods were deposited upon his wharf: Rodgers v. Stophel, supra. So, no doubt, a holding out of his warehouse to the public at large by advertisement, conspicuous signs or notices, etc., as a place for the storage of goods for hire by anyone seeking such accommodation would be evidence to fasten upon the owner the character of a warehouseman. It would not be enough to make his receipts warehouse receipts, as was pointed out in Bank v. Jagode, 186 Pa. 556, 565, and repeated in Moors v. Jagode, 195 Pa. 163, 166, unless supplemented by proof that he was in fact a bona fide warehouseman. But in connection with that fact it would be evidence, though not indispensable. No relevant argument can be drawn from the rule as to the character of the business of a common carrier. The very essence of that business, expressed by the word "common," is that it involves an undertaking, to carry for all persons indifferently: Verner v. Sweitzer, 32 Pa. 208. The word "common," or its equivalent, is, however, no part of the essential definition of warehouseman or wharfinger. In Hallgarten v. Oldham, 135 Mass. 1, much stress is laid upon the fact that a private warehouseman has "an unfettered right to choose the persons for whom he will hold," and is thus distinguishable from a common carrier who "has no delectus personarum, but is bound to carry for anyone." But suppose that the jury in order to find defendant to have been a warehouseman must have found that he held himself out to the public as such, a "loose expression" perhaps (Denithorne v. Hook, 112 Pa. 240, 243), but certainly the utmost that can be insisted upon. It is the uncontradicted evidence that he had his property insured as a "warehouse," that he so described it in transactions and

correspondence with others than the Greenes whose tobacco he received there, and that from the beginning of his dealings with them he knew of and permitted their use of the receipts issued by him to them as collateral for advances of money from various banks in Reading. Whilst it is true that the testimony does not show that he generally solicited the storage of goods in his place, yet all this clearly amounts to a sufficient declaration of its character to the public as a warehouse, a sufficient holding out of it to the public as such. And when upon evidence of that sort the jury was asked to decide whether he was a warehouseman and they said he was, the answer must be deemed to involve, because the evidence necessarily involved, if anything, his public profession of the business. If, however, the jury could not have found him to be a warehouseman except upon testimony which if it made him such also required a finding that he so held himself out to the public, then the omission in the charge to call their attention to this feature cannot possibly have done the defendant any harm, and constitutes no adequate ground for setting aside the verdict.

3. The jury was instructed that "if . . . . the defendant was a warehouseman and his building a warehouse, then these papers, if issued to represent cases of tobacco stored with him as a warehouseman, were warehouse receipts."

In order to be on its face complete and self-explanatory, a warehouse receipt might well be required (as is indeed proposed by the draft of the uniform law above referred to, sec. 2) to set forth the location of the warehouse, the date of issue, the consecutive number, a promise to deliver to bearer or to a specified person or to the order of such, the rate of storage charges, a description of the goods or the packages containing them, the signature of the warehouseman, and a statement of any claim of co-ownership or lien on his part. But under the law as presently obtaining, there is no such requirement. What is said in Bank v. Jagode, 186 Pa. 556, 563, about a receipt purporting to be issued by a warehouseman and to be for goods held in storage and deliverable on the order of the depositor and the return of the paper, is said

by way of description of the particular instrument there in question, and not by way of laying down any definite rule as to what a warehouse receipt must contain. On the contrary, it is stated that no form is prescribed. Indeed, an examination of many authorities, which it would be an affectation to enumerate, seems to demonstrate the impossibility of indicating as essential any one or any combination of the above-mentioned features, so long as by express language or by fair implication from the language understood in the light of the circumstances under which and of the intent with which the instrument was issued, it involves an acknowledgment by the signer of his possession of designated goods of another on storage and an obligation to deliver them to a specified person, or to his order, or to bearer, on return of the instrument. Upon proof that the signature is that of the party issuing the instrument, that he was a warehouseman, that the goods designated were actually stored with him, and that the instrument was given as representing the same, the instrument is to be deemed a warehouse receipt with all the qualities and incidents attaching thereto. If these facts be admitted or established by undisputed evidence, that conclusion may be one for the court. If the evidence concerning them be conflicting or susceptible of contrary inferences, it will be one for the jury. As to the papers here in question, there is no room for disputing their signature by defendant. His name was stamped upon each with a rubber stamp, and authenticated by himself writing under it the initial letter of his name, "S." That this was a sufficient signature is evident from the rules discussed in Knox's Est., 131 Pa. 220, and from the modern cases recognizing signature by mere stamp: Bennett v. Brumfitt, L. R. 3 C. P. 28; Robb v. Pennsylvania Co., 3 Pa. Superior Ct. 254; s. c., aff'd 186 Pa. 456. Neither is there any warrant for saying that the papers refer to another receipt. There was no other. The meaning of the words "included in receipt of this date" is either "included in this receipt," or "included in the deposit of this date." The nature, quantity and marks of the goods represented by each paper are set forth in it, and it contains a distinct promise to de-

liver them to the owner. On the part of a warehouseman such a promise obviously implies a statement that he holds the goods in storage; and the condition of delivery, the surrender of the receipt, involved in the promise itself, is further supplied by the statute, forbidding delivery except upon return of the receipt. If then the defendant was in fact a warehouseman and issued these papers in his capacity of warehouseman to represent cases of tobacco stored with him as such, and not as he contends as mere memoranda between himself and the Greenes, they were warehouse receipts. Clearly it was not error of which defendant can complain to leave it to the jury to say under all the evidence whether or not they were such.

4. If they were in fact warehouse receipts the act of 1866, without prescribing and hence without reference to their form, makes them "negotiable." The omission of words indicative of a purpose to that effect is by itself of no manner of consequence in view of the requirement of the statute that non-negotiable receipts shall be so marked. Every contract is conclusively presumed to be made with reference to the existing law and as embodying its relevant provisions: Snyder v. Leibengood, 4 Pa. 305, 308; West. Nat. Bank's App., 102 Pa. 171, 184; Burnett v. Railroad Co., 176 Pa. 45, 48; Silk Mfg. Co. v. Reilly, 187 Pa. 526, 532.

What then does the act mean by saying that warehouse receipts shall be negotiable? It is to be noted that there is, first, the substantive declaration that warehouse receipts shall be negotiable, and, second, the statement that they may be transferred by indorsement and delivery. Remembering that these provisions must be understood as having each a meaning of its own and not as being tautological, it will not do to contract them into one and read the two as meaning together nothing more than if the language were, "warehouse receipts shall be negotiable by indorsement and delivery." Since the direction making such instruments negotiable would, without anything more, have implied that they should be transferable by indorsement and delivery, the addition that they may be so transferred indicates, according to the strictest application of the principle expressio unius est exclusio alterius,

Maxwell, Int. Stat., 398, that the legislature in the first declaration had in mind something different from the mere mode of transfer and intended to impart to these instruments a quality not synonymous with or exhausted by such transferability. Now, the distinctive quality expressed in our jurisprudence by the term "negotiable" is that of passing without incumbrance or condition: Overton v. Tyler, 3 Pa. 346; Woods v. North, 84 Pa. 407. It needs no citation of authorities to show that that settled meaning is, in so far as it is applicable to the subject-matter of an enactment employing the term, the one with which it must be supposed to have been used therein. The limitations of this meaning of the word in the act of 1866 pointed out in Shaw v. Railroad Co., 101 U. S. 557 (which was the case of a bill of lading, coordinated with warehouse receipts by the act of 1866, and thereby put upon the same footing: Sloan v. Johnson, 20 Pa. Superior Ct. 643, 648, without restriction to goods in transit; Munroe v. Warehouse Co., 75 Fed. Repr. 545), are such only as necessarily result from the peculiar nature of the instrument involved and the peculiar purposes it is designed to serve. As there decided, the rule that a purchaser without notice though under circumstances of suspicion, Phelan v. Moss, 67 Pa. 59, of a lost or stolen bill or note indorsed in blank or payable to bearer is not bound to look beyond the instrument, has no application to the case of a lost or stolen bill of lading, nor, it may therefore be added, to a lost or stolen warehouse receipt. Such an instrument performs functions different from those of a note or bill. It does not, like these, take the place of banknotes or coin. It is the symbol of the ownership of goods and a representative of those goods. If the goods themselves be stolen or lost, the owner's property therein is not divested, and neither can it be by the loss or theft of the receipt without default on his part. In principle and reasoning there is no difference between this case and Transportation Co. v. Steele, 70 Pa. 188, or the rule laid down in Decan v. Shipper, 35 Pa. 239, before the act of 1866 was passed. And similarly, in Bank v. Hurt, 99 Ala. 130 (12 So. Repr. 568), the statutory negotiability of

warehouse receipts was held not to enable one taking them by way of pledge from a factor who without authority of the owner had stored his goods and obtained the receipts, to assert title to the goods superior to that of the owner. But no questions of that sort arise here. There is no question in this case at all between the owner of the goods and the holder of the receipts. The question is whether, in the face of the statute declaring them negotiable, the warehouseman who issued 'them can be heard to set up a secret arrangement between himself and the owner defeating the apparent right of the holder whose protection is the very purpose of the enactment: Pig Iron Storage Warrant Co. v. Iron & Coal Co., 205 Pa. 403, 411. No authority has been pointed out for an affirmative answer to this question. Nor is it conceivable how such an answer can be made except with the effect of entirely wiping out of the statute the words "shall be negotiable." It would seem to be going quite as far as to permit the warehouseman to deny, as against the holder of the receipt, that the goods mentioned therein were in his keeping— a defense which has been adjudged inadmissible: Stewart v. Insurance Co., 77 Tenn. 104; Cathcart v. Snow, 64 Iowa, 584 (21 N. W. Repr. 94, 95). The instructions to the jury on this subject do not appear to have been wrong.

5. Finally the jury was told that a delivery of the receipts to the plaintiff with the intent to entitle it to the tobacco represented by them, though without formal indorsement at the time, was enough to bring it, as the holder thereof, substantially within the protection of the principles just discussed. Probably the decision in Sloan v. Johnson, 20 Pa. Superior Ct. 643, that warehouse receipts will pass by such delivery alone is conclusive of the correctness of that instruction. But it is contended that the question there arose between the owner of the goods and the party to whom he had delivered warehouse receipts representing them; and that what constitutes a valid and complete transfer of them as between those parties is not necessarily a valid and complete transfer as between the warehouseman and the transferee. The reasons for such distinction are by no means clear, though

it is plain enough that if, in order to be fully available against the warehouseman, the transfer must be by indorsement as well as delivery, then where the transfer is in the first instance by delivery alone and the indorsement is added only after notice to the transferee of equities claimed by the warehouseman, the transfer must be treated as taking effect as of the time when the indorsement is actually made, and therefore as subject to those equities in so far as they may be established by the proofs and not displaced by waiver or estoppel.

It seems to be the general doctrine of American decisions that apart from any statutory provisions a warehouse receipt, like a bill of lading, is the symbol or representative of the goods it is issued for, and that, whether drawn to the owner's order, or to bearer, or simply to the owner, its delivery by the latter is effective as a symbolical delivery of the goods themselves, with or without indorsement. It is sufficient to refer to the following cases as sustaining this statement by their own reasoning and by the citation of authorities collated in them: Rice v. Cutler, 17 Wis. *351; Whitney v. Tibbitts, 17 Wis. *359; Atherton Co. v. Ives, 20 Fed. Repr. 894; Banking Co. v. Peacock, 103 Ga. 171 (29 S. E. Repr. 752); Stewart v. Insurance Co., 77 Tenn. 104. The contrary doctrine apparently held in Hallgarten v. Oldham, 135 Mass. 1, at variance with earlier rulings of the same court, is founded on the ancient English view embodied in 2 Dan. Neg. Instr., sec. 1713, and upon the express assumption, contrary to the rule, obtaining here and elsewhere, that a return of the receipt to the warehouseman is not a condition of the right to take away the property stored (see p. 12). If the receipt stands as the symbol of the goods, the owner of the latter to whom it is issued has the same power to pass title to the goods by delivery of the receipt as he has to pass title to the goods in his manual possession by a delivery of them: Transportation Co. v. Steele, 70 Pa. 188, 190, 191. Delivery of the one is in law delivery of the other. Manifestly, therefore, it is immaterial whether the receipt be written to his order, or to bearer, or not—except where, as is emphasized in Hallgarten v. Oldham, 135 Mass. 1, it is by statute required to be "negotiable in

form." Neither, if the delivery of the receipt is a delivery of the goods, is its indorsement or nonindorsement of any consequence with respect to the completeness of the transaction. The effect of indorsement is not to impart original negotiability to an instrument not originally negotiable. It is not an independent contract, says Chief Justice GIBSON in Patterson v. Poindexter, 6 W. & S. 227, 234, but a parasite which takes the hue of the thing with which it is connected and operates one way when attached to a negotiable instrument and another way when attached to other choses in action. As already seen, it does not when put upon a warehouse receipt import a guaranty of title. But it is asserted by defendant's counsel with much confidence that our statute makes it indispensable to the legal transfer of title. The statute does not say so. It does not say that warehouse receipts are negotiable by indorsement. It says, in guarded and significant language, they "shall" be negotiable, and "may" be transferred by indorsement and when so transferred shall be deemed and taken, etc. In other words, it peremptorily gives to all warehouse receipts a certain quality which does not in any degree derogate from the character they had before, and then permissively provides for a specified method of transfer, not in terms exclusive of any other, and attaches to such additional method, if pursued, consequences differing, if at all, only in part from those incident to transfer by mere delivery. It is worthy of note that in Transportation Co. v. Steele, 70 Pa. 188, the decision, involving certain bills of lading, which are included in the act of 1866 with warehouse receipts, proceeded expressly without reference to that statute. Nor is it insignificant that the supplement to the same of June 13, 1874, P. L. 285, relating to attachments of goods in hands of warehousemen who have issued receipts therefor, speaks of these as having been "negotiated and transferred by indorsement or delivery, as provided in the act to which this is a supplement, and makes "the holder . . . . to whom the same shall have been transferred or delivered as aforesaid" the garnishee. It is doubtless true that a mistaken opinion of the law on the part of the legislature does not avail to change the law:

Bank of Pennsylvania v. Com., 19 Pa. 144, 156; Seiders v. Giles, 141 Pa. 93, 100. On the other hand, in the interpretation of a statute, it is very well settled that the understanding of it evidenced by the legislature in subsequent enactments is to be treated as of great weight: Folk v. State Capital Savings, etc., Assn., 214 Pa. 529, and cases cited at p. 538. But the cases already cited of Rice v. Cutler, and Whitney v. Tibbitts, 17 Wis. *351, *359, directly raised the question of the sufficiency of a transfer of warehouse receipts with and without words of negotiability by mere delivery and without indorsement in view of a statute apparently exactly like ours in its provision for transfer. It was pointed out that warehouse receipts were transferable by delivery independently of the statute—that the language of the latter as to the mode of transfer was permissive only—and that, for these reasons and keeping in mind the objects of the enactment (substantially the same as those ascribed to ours), if the intent of the parties was to transfer the property by the delivery of the receipts, the same was, unaffected by the statute, effective for that purpose without indorsement. It is true that the contest there was between the transferee on the one side, and the transferor or his attaching creditors on the other. But the principle of the decisions makes the conclusion equally applicable in a contest between the transferee and the warehouseman. That principle is that for all purposes the transfer of goods in storage is complete upon delivery of the receipts with intent to transfer title to the goods represented thereby; that an indorsement of the receipt adds nothing to the effectiveness of such delivery; and that the statute, whilst permitting, does not require transfer of warehouse receipts by indorsement.

What has been said seems to cover all the positions taken by defendant and examined not without a disposition to make every permissible intendment in his favor. The result is the conclusion that there is no ground apparent for either entering judgment for him upon the whole record or granting a new trial. And in this connection it may not be out of place to suggest that, even conceding the liability of the transferee

of warehouse receipts by delivery only to be affected with a secret agreement between the transferor and the warehouseman such as here alleged, the pleadings and evidence in this case are not calculated to sustain a verdict for defendant on that ground. Whatever may be the precise effect of the statutory declaration that warehouse receipts shall be negotiable, and indeed apart from that declaration, it is very certain that they are something more than and different from ordinary receipts which are noncontractual and therefore under familiar principles open to parol explanation and contradiction. Warehouse receipts are, as pointed out in Stewart, Gwynne & Co. v. Insurance Co., 77 Tenn. 104, 109, essentially contracts and as such within the rules applicable to written instruments—a doctrine resulting not precisely from their negotiability, but from the nature and purposes of such receipts regardless of their form, and yet all the more manifestly in point where, as here, the receipts contain a formal promise to deliver the packages described in them, unqualified except by the condition implied by law and usage that the receipt be returned and the storage charges paid. It is to be noted that the affidavit of defense, which with the declaration makes the issues to be tried in replevin under the act of 1901, neither alleges fraud, accident or mistake as accounting for the issuance of the receipts in this form, nor avers that their execution was induced by the oral agreement set up by defendant to overcome it. The evidence on the other hand relied upon to establish that agreement, denied by J. L. Greene with whom it is said to have been made, consists solely of the testimony of the defendant. It is corroborated by no circumstances, unless it be the fact that the words "or bearer" contained in a previous batch of receipts were omitted in these. In view of the needlessness of those words (and in a note to sec. 37 of the proposed uniform warehouse receipt law it is said to be "not usual for warehouse receipts to be made to bearer") and of a great variety of circumstances, which it is unnecessary here to discuss, but which strongly tend the other way, Fisher v. Scharadin, 186 Pa. 565, 568, this single item cannot be regarded as equivalent in its probative effect

to the testimony of a second witness. The testimony of the remaining witnesses referring to the alleged agreement, however, is not in any sense proof of its existence. It goes to show simply that its existence was subsequently and after the plaintiff's rights had attached acknowledged by J. L. Greene, and thus went to discredit his denial of it on the stand. Of course no declarations of his after he had transferred the property to the plaintiff could avail to affect its title; and equally of course proof of his declarations as to the existence of a fact, being nothing more than hearsay evidence of the fact, cannot stand as proof of it: Com. v. Contner, 18 Pa. 439, 444. Neither has there been pointed out any statement by defendant anywhere that the alleged agreement operated as the inducement for his execution and issuance of the receipts containing the promise mentioned. The element of fraud, accident or mistake has so long been deemed and so often held an essential part of both pleadings and proofs in order to entitle a party to relief against the letter of his contract that a reference to the cases may well be omitted. Equally settled is the requirement for this purpose of both allegation and proof that a parol agreement relied on as varying a written contract operated as the inducement for its execution, without which it would not have been entered into: Myers v. Kipp, 20 Pa. Superior Ct. 311, 316. And under the very recent decision in Sulkin v. Gilbert, 218 Pa. 255, it is, where the defendant setting up such defense is himself a witness, indispensable to its establishment that he should explicitly and directly so swear.

The rules to show cause are discharged.

*Error assigned* was in refusing binding instructions for defendant and in refusing judgment for defendant non obstante veredicto.

*John G. Johnson,* with him *Isaac Hiester* and *B. Y. Shearer,* for appellant.—One who does not hold himself out as a warehouseman but who incidentally receives on storage two lots of goods from one person and gives memoranda therefor which without his knowledge and against his intention are

pledged to a third party, does not become liable to such third party thereon as on warehouse receipts: Bucher v. Com., 103 Pa. 528; Rodgers v. Stophel, 32 Pa. 111; Beckman v. Shouse, 5 Rawle, 179; Gordon v. Hutchinson, 1 W. & S. 285; Fuller v. Bradley, 25 Pa. 120; Verner v. Sweitzer, 32 Pa. 208; Bank v. Jagode, 186 Pa. 556; Shepardson v. Cary, 29 Wis. 34; Geilfuss v. Corrigan, 95 Wis. 651 (70 N. W. Repr. 306); Security Warehousing Co. v. Hand, 143 Fed. Repr. 32; Sandford v. Railroad Co., 24 Pa. 378; Munn v. Illinois, 94 U. S. 113, 115; Budd v. New York, 143 U. S. 517 (12 Sup. Ct. Repr. 468); Brass v. North Dakota, 153 U. S. 391 (14 Sup. Ct. Repr. 857).

It has been held in other states under statutes declaring that receipts issued by a warehouseman shall be negotiable and transferable by indorsement, that warehouse receipts transferred by delivery only are subject to any defense or set-off which the warehouseman may have against the depositor up to the time the warehouseman is notified of the transfer: Toner v. Citizens' State Bank, 56 N. E. Repr. 731; Jemison v. Birmingham, etc., R. R. Co., 28 So. Repr. 51; People's Bank v. Etting, 14 Phila. 230.

Where a chose in action is assigned with the effect of entitling the assignee to sue in his own name, the defendant may nevertheless set off all debts and liabilities of the assignor to him contracted before notice of the assignment, for it is the duty of the assignee to give him actual notice: Bury v. Hartman, 4 S. & R. 175; Horstman v. Gerker, 49 Pa. 282; Shaw v. Railroad Co., 101 U. S. 557; Phelan v. Moss, 67 Pa. 59; Foster v. Carson, 159 Pa. 477.

*C. H. Ruhl* and *C. H. Schaeffer*, for appellee.—A warehouseman is " one who receives and stores goods as a business for compensation. or profits:" Bucher v. Com., 103 Pa. 528.

The defendant contends that it is essential that it appear that the defendant held himself forth to the public generally as ready to store goods for hire, without which the jury could not find him to have been a warehouseman. It is not essential that such facts appear: Moors v. Jagode, 195 Pa. 163.

That a bill of lading passes title by delivery to the property

therein described is well sustained by authority: Schmertz v. Dwyer, 53 Pa. 335; Holmes v. German Security Bank, 87 Pa. 525; Harrison v. Mora, 150 Pa. 481; Richardson v. Nathan, 167 Pa. 513.

The transfer of title to the property represented by the bill of lading by its delivery was declared not because of the common law, but because of the statute: Sloan v. Johnson, 20 Pa. Superior Ct. 643.

The further contention of the defendant that bills of lading were, and warehouse receipts were not, transferable by delivery only, independently of the statutory provision, is not sustained by authority: Gibson v. Stevens, 49 U. S. 384; Gibson v. State Bank, 11 Ohio St. 311; Shepardson v. Cary, 29 Wis. 34; Whitney v. Tibbitts, 17 Wis. *359; Rice v. Cutler, 17 Wis. *351.

The transfer of a warehouse receipt is not a symbolical delivery, but a real delivery, to the same extent as if the goods had been transported to another warehouse named by the pledgee: Union Trust Co. v. Wilson, 198 U. S. 530 (25 Sup. Ct. Repr. 766).

OPINION BY MR. JUSTICE BROWN, October 11, 1909:

The Act of September 24, 1866, P. L. (1867) 1363, making warehouse receipts negotiable, does not define a warehouseman, and there is nothing in it requiring him to hold himself out to the general public as such. We have defined him to be "one who receives and stores goods as a business for a compensation or profit:" Bucher v. Com., 103 Pa. 528; Tradesmen's Nat. Bank v. Jagode, 186 Pa. 556. There was sufficient evidence for the finding by the jury that the appellant was a warehouseman within our definition of the term as used in the act of 1866, and the learned and careful judge below properly so held in his opinion overruling the motion for a new trial and refusing judgment for the defendant n. o. v. On that opinion which clearly and correctly disposes of the questions raised on this appeal I am directed by the court to affirm the judgment.

Judgment affirmed.