## In re ROHRER.

(District Court, S. D. Ohio, W. D.   January 26, 1911.)

No. 4,423.

1. WAREHOUSEMEN (§ 15*)—RECEIPTS—PLEDGES.

Pledges of so-called warehouse receipts against pledgor's whisky stored in his own warehouse are invalid; there being nothing about the whisky to indicate that any one else had any interest in it excepting the government's interest in payment of taxes.

[Ed. Note.—For other cases, see Warehousemen, Cent. Dig. §§ 31–37: Dec. Dig. § 15.*]

2. PROPERTY (§ 9*)—OWNERSHIP—PERSONALTY.

Ownership of personalty is presumed from possession.

[Ed. Note.—For other cases, see Property, Dec. Dig. § 9;* Evidence. Cent. Dig. §§ 78, 87.]

3. PLEDGES (§ 11*)—POSSESSION BY PLEDGEE—NECESSITY.

Possession must accompany a pledge, the pledgee having a qualified ownership, but there may be a symbolic or constructive delivery of possession if it is as effectual against the general owner as a delivery of the property.

[Ed. Note.—For other cases, see Pledges, Cent. Dig. §§ 28–35; Dec. Dig. § 11.*]

4. WAREHOUSEMEN (§ 15*)—RECEIPTS—PLEDGES.

A pledge of warehouse receipts symbolically passes possession to the pledgee.

[Ed. Note.—For other cases, see Warehousemen, Cent. Dig. §§ 31–37; Dec. Dig. § 15.*]

5. WAREHOUSEMEN (§ 3*)—DEFINITION.

A "warehouseman" is one who for business and for hire keeps and stores the goods of another.

[Ed. Note.—For other cases, see Warehousemen, Cent. Dig. § 4; Dec. Dig. § 3.*

For other definitions, see Words and Phrases, vol. 8, p. 7392.]

In the matter of David Rohrer, bankrupt.   On question of validity of pledges.   Orders directed.

Kramer & Kramer, for Republican Dist. Co. and Mountain Dist. Co.

H. L. Ferneding, John Shea, and D. B. Van Pelt, for Geo. H. Goodman Co.

Robertson & Buchwalter, for Sadler.

E. H. & R. A. Kerr, for Detrick Dist. Co.

W. H. Mackoy, for White.

Walter A. Ryan, for Pearl Street Market Bank.

Young & Young and Ben. L. Heidingsfeld, for Heidingsfeld.

Jackson W. Sparrow, for Burckhardt Estate.

Ferdinand Jelke, Jr., for Hofer.

Rowe, Shuey, Matthews & James, for Stiver and others.

Cobb, Howard & Bailey, for Edwards.

Dale & Kusworm, for Bankrupt.

Healy, Ferris & McAvoy and James E. Robinson, for Petitioners.

Gilbert N. Bettman, for Cross-Petitioner.

R. M. Ochiltree, for Merchants' Nat. Bank.

Thomas B. Paxton, Jr., for C. Sandheger Co.

A. J. Ullman, for Beech Hill Dist. Co.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

HOLLISTER, District Judge. David Rohrer had a distillery and distillery warehouse in connection therewith in Montgomery county, Ohio. In the warehouse were stored 9,849 barrels of whisky made in the distillery. During a number of years prior to the time he was adjudged a bankrupt he issued so-called warehouse receipts against his own whisky in his own warehouse as security to persons who had loaned him many thousands of dollars in the aggregate. In some instances the same whisky was described in different receipts issued to different persons. In one instance six different persons had receipts describing the same whisky. He also sold some of the whisky to innocent purchasers.

[1] It is claimed by the trustees in bankruptcy and by the purchasers that the pledges were invalid, in that there was no delivery of possession actual or constructive. The sole question involved in the present submission goes to the validity of the pledges. It will serve no useful purpose to enter into a lengthy discussion of the many decisions cited by counsel bearing upon this question; but a brief reference to some of them and the principles underlying the case may be sufficient.

It is clear that Rohrer's possession of this whisky was complete as against everybody except the government of the United States, which, through its officers, acted merely as guardian or watchman, to the end that the whisky warehoused by the distiller himself should not escape the payment of the tax on distilled spirits. The pledgees build their case on the language of Judge Acheson, in McCullough v. Large (C. C.) 20 Fed. 309, in whose opinion Mr. Justice Bradley, sitting with him on the circuit, concurred. The question was whether a sheriff acting under process issued by a state court could seize the whisky of a distiller in his own distillery warehouse under a writ of execution. The language is:

"The whisky in question was virtually in the possession of the United States—held for internal revenue tax—and the sheriff could not rightfully disturb that possession."

This case was decided in 1884, and in it no reference was made to United States v. 36 Barrels of High Wines, 7 Blatchf. 459, Fed. Cas. No. 16,468, decided in 1870 by the circuit judge in the Northern District of New York. In that case the district judge in a proceeding for condemnation for certain barrels of high wines and grape brandy which had been fraudulently removed from a distillery warehouse without the payment of the tax charged the jury that property in such a warehouse cannot be considered in the possession or custody or within the control of the distiller. To this charge the attorney for the United States excepted. The Circuit Court reversed the judgment; Judge Woodruff saying among other things:

"The warehouse in this case was a part of the distillery premises, in the proprietorship of the claimants and the spirits in question were their property. The act nowhere in terms provides that the government inspector shall have any possession, custody, or control of the spirits, but only a custody of the warehouse, jointly with the owner. This is giving to the inspector, through his participation in the custody of the warehouse, and by the discharge of his duty to keep the same locked when not personally present, a means of guarding against the illegal removal of spirits, but invests him with

no legal possession thereof. Whatever custody or control he has over the spirits is purely incidental, or a consequence of his joint custody of the place where they may happen to be, and he has not, as a legal proposition, a custody of the spirits themselves. In point of law the owner of the spirits, and the owner of the warehouse wherein they are stored, is in possession of the spirits; and I have no hesitation in saying that he could maintain any action known to the law adapted to redress an illegal interference with his possession."

And it is further said with much else that is pertinent:

"So, here, in my judgment, the owner of both warehouse and spirits has possession and custody and control within the meaning of the act in question, even though, for the purpose of guardianship over the rights and interests of the government in the tax due thereon, the inspector be deemed to have a joint custody with him."

In United States v. Witten, 143 U. S. 76, 12 Sup. Ct. 372, 36 L. Ed. 81, the action was on a bond given by Witten as principal to the United States. The condition was that the principal should pay or cause to be paid the taxes due on certain distilled spirits in his warehouse before the spirits should be removed and within three years from the date they were entered for deposit in the distillery warehouse. It was alleged that at the date of the bond Witten had on deposit in his distillery warehouse certain distilled spirits, and had failed to pay within three years from the date of entry the taxes due. The defendants were permitted to offer evidence tending to show that the locks on the doors of the warehouse, placed there by revenue officers, were not such as required by law, and were insufficient and insecure, and that the warehouse was broken open and the spirits stolen. The court refused to instruct the jury that, even if these facts were proved, yet the government was entitled to recovery. The Supreme Court held that these facts afforded no defense; Mr. Justice Gray saying:

"Under the requirements of the internal revenue laws, the warehouse was provided by the owner of the distillery, at his own expense and on his premises, and although declared to be a bonded warehouse of the United States, and required to be under the direction and control of a government storekeeper, was in the joint custody of the storekeeper and the owner. The deposit of the spirits in the warehouse was solely for the benefit of the distiller, and to enable him to give bond for the payment of the tax on the spirits, instead of paying the tax at once. The government assumed no responsibility to him for their safekeeping. If he was not satisfied with the security of the warehouse, he had only to take any measure consistent with the access and supervision of the revenue officers to make it more secure, or else to pay the tax and remove the spirits. The only duty which the revenue officers owed in regard to the security of the warehouse and the safekeeping of the spirits therein was to the government, and not to the defendants."

In Van Schoonhoven v. Curley et al., 86 N. Y. 187, the Court of Appeals of New York were of opinion that under such circumstances as these the distiller was not a warehouseman in the usual sense, but, as they say, "from necessity and force of law" only. At best, then, the government and the distiller have the joint custody of the warehouse, and so the statute says. Rev. St. § 3271 (U. S. Comp. St. 1901, p. 2122).

[2] The possession of personal property presumes ownership. The ownership is general or qualified. [3] Possession must accompany

the pledge of personal property; the pledgee having a qualified owner-ship for the purposes of the pledge. There may be a symbolical or constructive delivery of possession to a pledgee, but that delivery must be as effectual against the general owner as the delivery of the property it represents. The property itself passes either actually or constructively out of any dominion or control of the owner, otherwise there is no pledge. [4] Warehouse receipts symbolically pass pos-session from the general to the qualified owner, the pledgee, because the possession of the actual property has so far passed out of the hands of the general owner that acts of dominion exercised by him are no longer possible. When the pledgees took these receipts, they knew that the owner could satisfy such control as the government had jointly with him by paying the tax. They knew that such control as the government had might be raised at any moment, and that the owner would then be under no restraint whatever, and could roll the barrels out of the warehouse without let or hindrance from anybody. This would not be possible when goods are in a warehouse in the or-dinary sense. [5] A warehouseman is a third person who for busi-ness and for hire keeps and stores the goods of another. Black, Law Dict. He is a person who receives goods and merchandise to be stored in his warehouse for hire. Bouvier's Law Dict. and other authorities cited in Bank v. Whitehead, 149 Ind. 560, 49 N. E. 592, 39 L. R. A. 725, 63 Am. St. Rep. 302; Bucher v. Commonwealth, 103 Pa. 528; Bank v. Shearer, 225 Pa. 470, 74 Atl. 351; Conrad v. Fisher, 37 Mo. App. 352, 8 L. R. A. 147; Union Trust Co. v. Trumbull, 137 Ill. 146, 27 N. E. 24. The owner stores his goods there and parts with pos-session. By contract with him the warehouseman has actual posses-sion and the owner symbolical possession. The owner passes his sym-bolical possession on by pledge of the receipt. This is good because the owner has no dominion over the goods themselves, and the pledgee succeeds to his right to get the actual goods by presenting the receipt to the warehouseman who will not, without it, part with them. The owner after pledging the receipt cannot himself get the goods. A delivery of actual possession prevents fraud of the pledgor. The de-livery of the symbol should be no less effective. If he warehouses his own goods and issued receipts against them, the door is open for the grossest frauds; this case being an example.

If whisky is stored in a general bonded warehouse provided by section 51 of the act of August 27, 1894, c. 349, 28 Stat. 564 (U. S. Comp. St. 1901, p. 2143), which puts it into the joint custody of the storekeeper and third person, the proprietor of the warehouse, the owner, would be out of possession, and such frauds would be impos-sible. In Casey v. Cavaroc, 96 U. S. 467, 24 L. Ed. 779, the reason is given for the necessity of the change of possession from the owner to the qualified owner, the pledgee. Mr. Justice Bradley says in that case:

"The requirement of possession is an inexorable rule of law, adopted to prevent fraud and deception; for, if the debtor remains in possession, the law presumes that those who deal with him do so on the faith of his being the unqualified owner of the goods."

In Fourth St. Nat. Bank v. Millbourne Mills Co.'s Trustee, 172 Fed. 177, 96 C. C. A. 629, the Circuit Court of Appeals for the Third Circuit after making the same quotation from Casey v. Cavaroc say:

"It is true that a symbolical or constructive delivery is recognized in favor of articles of great bulk or difficulty of handling; but the policy of the law is against the relaxation of the rule. Sholes v. Asphalt Co., 183 Pa. 528, 38 Atl. 1029. And even as to these there must be a surrender of dominion and a setting apart of the property, with such distinctive marks as will serve to indicate that, while in the apparent possession of the owner, it is not in fact his. Philadelphia Warehouse Co. v. Winchester (C. C.) 156 Fed. 600. As is well said by Judge Bradford in that case, there must be enough to negative ostensible ownership, nothing of which is to be found here."

In Bank v. Millbourne Mills, supra, the second headnote is justified by what is said in the opinion. It reads:

"A man cannot make a warehouse of himself as to his own goods, and by issuing and pledging warehouse receipts make a valid transfer as against his creditors of property which remains in his possession and under his control. without anything to distinguish it from his other property, or to indicate that he is not the unqualified owner."

There is nothing about this whisky to indicate that anybody but Rohrer had any interest in it whatever, except the government, and that interest was solely that the tax would be surely paid before the whisky was actually removed. It is true each barrel of whisky had a mark and number, and that these marks and numbers were carried into the receipts, but there was no way to tell by looking at the barrels that they belonged for any purpose to anybody but the owner, nor were they put into the charge of any one as agent for the pledgee, facts which clearly distinguish the case from In re Cincinnati Iron Store Co., 167 Fed. 486, 93 C. C. A. 122.

Under the laws of Ohio, a pledge of chattels good as against creditors, subsequent purchasers, and mortgagees in good faith must be filed in the manner prescribed, unless there is an immediate delivery followed by actual and continued possession of the things mortgaged. Section 4150, Rev. St. In Thorne v. First National Bank, 37 Ohio St. 254, the law is declared to be that:

"An instrument in the form of a warehouse receipt, executed by a debtor, who is not a warehouseman, for the sole purpose of securing such creditor, is void as against other creditors, where the property remains in the possession of such debtor."

This case is directly in point, and its authority is not in the least disturbed by the decision of the Supreme Court of Ohio in Hunt v. Bode et al., 66 Ohio St. 255, 64 N. E. 126. The pledgor there had not issued a receipt against his own goods in his own warehouse. He had no possession of the chattels except such as was evidenced by the receipt in question, the validity of which was not attacked. By delivering the receipt to the bank, he symbolically delivered the possession of the property. His equity in the property as represented by the receipt was valuable. This he pledged to Dieckmann, and notified the bank. After the bank's claim was satisfied, nobody but Dieckmann could get the balance. The pledgor's possession was gone. The bank had it to pay itself and Dieckmann.

I have only referred to some of the most important cases among the very many cited by counsel. To my mind they show conclusively that the referee reached the proper conclusion as shown by the admirable opinion filed by him in the case. The referee did not follow the decision of the district judge in the Eastern District of Pennsylvania in Re Miller Pure Rye Distilling Co. (D. C.) 176 Fed. 606, in which the exact question was decided in favor of pledgees. Counsel for the pledgees rely upon that case as establishing every principle they contend for in this and commend to the court the reasoning of the learned judge in his opinion in that case as coinciding with the conclusions they had reached before that case was decided. It appears that the Circuit Court of Appeals for the Third Circuit has reversed that judgment. Mr. Thomas B. Paxton, Jr., one of the opposing counsel, has filed and submitted in this case an uncertified typewritten paper purporting to be a decision of that court, dated November 9, 1910; the opinion being written by Archbald, District Judge.†

It is assumed that the decision is what it purports to be, and this court, being in entire agreement with it, cheerfully follows it. But, whether that decision was made or not, the reasons given in what purports to be the opinion, and upon the authorities cited for the invalidity of the pledges, are it seems to me unanswerable. Orders may be taken accordingly.

The relative rights of the trustees and purchasers, the relative rights of the pledgees and the trustees, as affected by York v. Cassell, 201 U. S. 344, 26 Sup. Ct. 481, 50 L. Ed. 782, and the status of those pledgees who filed their receipts as if chattel mortgages, were not argued orally or by brief by both sides in those controversies, and are therefore not now decided.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

† Opinion withdrawn on rehearing and judgment of lower court affirmed, Taney v. Penn Nat. Bank, 187 Fed. 689.