## Keller et ux. v. Lyman et al.

*Robert L. Meyers, Jr.,* and *Thomas Zerbe,* for plaintiffs.

*Joseph L. Kramer* and *Addison M. Bowman, Jr.,* for defendants.

SHUGHART, P. J., January 31, 1949.—Plaintiffs filed a petition for a declaratory judgment which was followed by a stipulation of counsel in which the facts set forth in the petition are admitted.

Defendants are all officials of the Borough of New Cumberland, the burgess, the building inspector and the members of the borough council.

From the petition and stipulation it appears that plaintiffs are the owners of a lot of ground situate at Bridge Street and Park Avenue in the Borough of New Cumberland, Cumberland County, Pa., on which plaintiff, Kenneth R. Keller, has been conducting the business of buying and selling used automobiles at retail. In connection with this business, plaintiff has in his possession on the lot numerous motor vehicles. The lot in question is situate in the commercial district of New Cumberland as defined in the New Cumberland Borough ordinance in effect at the time of the filing of the petition.

On or about April 17, 1947, plaintiff, Kenneth R. Keller, was notified by the Building Inspector of the Borough of New Cumberland to discontinue the use of the lot in question as a used car storage yard or be subject to the penalties provided by the ordinance. Whereupon he filed the petition for declaratory judgment which is the matter now before the court.

The section of the ordinance in question is section 5 of the Zoning Ordinance of the Borough of New Cumberland adopted June 5, 1946, which provides in part as follows:

"Section 5.—COMMERCIAL DISTRICT "C-1"— REGULATION.

"Use: In the Commercial District, no building or premises shall be used and no building shall be hereafter erected or structurally altered, unless otherwise provided in this ordinance, except for one or more of the following uses:

"1. Any use permitted in Residence District R-2.

"2. Stores, shops, offices and theatres.

"3. Any other use associated with trade in consumers' goods and services except the following: . . . (j) Warehouses or storage yards."

It is the contention of counsel for the borough that the foregoing language prohibits the use of the lot in question as a used car lot. The sole question presented for determination is whether the business of buying and selling used automobiles and motor vehicles at retail constitutes the business of conducting a "warehouse and storage yard" within the meaning of the ordinance.

In the case of Stone v. Marks Corporation, 183, May term, 1943, this court, speaking through our learned predecessor, Judge Reese, held that this court has jurisdiction under the Uniform Declaratory Judgments Act of June 18, 1923, P. L. 840, as amended (12 PS §831), to render a declaratory judgment construing a municipal ordinance and declaring rights thereunder.

It is conceded by defendants that plaintiff keeps on the premises in question only cars that he has on display for purpose of sale or exchange. They contend, however, that because of the slow "turn-over" it is conceivable that the cars may be on the lot so long that the appearance of the lot would change from what is ordinarily thought of as a used car lot into a junk yard. This argument supports a contention that the business of retail used cars should be restricted, but does not aid in a determination of what constitutes a warehouse or storage-yard under the ordinance.

The word "storage" has been defined by Webster's New International Dictionary as "act of storing, or state of being stored"; specifically, "the safekeeping of goods in a warehouse or other depository". It has been said that "the term storage is not properly ap-

plied to merchandise on hand for immediate sale and disposition": 60 C. J. §115. A storage-yard is simply a yard used for the purpose of storage.

The word "warehouse" has frequently received judicial construction. Its meaning, however, in a particular case depends to a great extent on the connection in which it is used. Therefore, it has been variously defined: 67 C. J. §442.

It has been defined as a place adapted to the reception and storage of goods and merchandise: Owen v. Boyle, 22 Me. 47.

A warehouseman has been defined to be "one who receives and stores goods as a business for a compensation or profit": Bucher v. The Commonwealth, 103 Pa. 528; The Tradesman's National Bank v. Jagode, 186 Pa. 556; National Union Bank of Reading v. Shearer, 225 Pa. 470, 485.

"In a broad sense and as used in common parlance, a 'warehouse' is a house used for storing goods, wares, and merchandise whether for the owner or for someone else, and whether the same be a public or private warehouse; a place adapted to the reception and storage of goods and merchandise. The term is frequently thus broadly used to indicate a place where the owner of goods stores them until he is ready to put them on the market . . .": 67 C. J. 442-443.

Since the definitions of the words "storage-yard" and "warehouse" depend on the connection in which they are used, we must examine the possible meaning as used in this ordinance. It is noted that in article or paragraph 2 of section 5, stores and shops are specifically permitted. What then would be the effect of holding that plaintiff's activity constituted the operation of a warehouse or storage-yard?

To hold that plaintiff's activity in the instant case constitutes the operation of a warehouse or storage-yard we feel would demand a determination that

every retail merchant in the business area was similarly engaged. Every retailer has on his shelves merchandise which he has held for an extended period because of the lack of demand. For example, a furniture merchant may have a chair, a table or a suite of furniture for which there has been no sale for a year or more; a druggist may have a supply of a certain drug or cosmetic of which he cannot dispose, or a clothier may have suits, hats or coats for which there are no buyers. Does this mean that in those cases a warehouse is in operation? Most certainly the ordinance in question did not so intend.

A reading of the ordinance makes it clear that the retention of unsaleable articles does not change the furniture dealer, the druggist or the clothier into an operator of a warehouse or storage-yard. This conclusion is apparent from the ordinance itself when it specifically authorizes the operation of stores and shops in the area in question. How then can possession of used automobiles pending sale or exchange by plaintiff here effect such a change in his status? We think that it does not.

It is felt that the right of an owner to the use of his property should not be restricted by implication, nor should his rights to the use of property be diminished by a strained or doubtful construction. "At common law the owner of land was free to use it in such manner as he saw fit and without any restrictions or reservations, subject only to the limitation that his use of his own property would not cause injury or damage to others. The restriction placed upon this property by the condition in 1925 is, therefore, in derogation of the common law and such restriction must be strictly construed": Shapiro's Appeal, 94 Pitts. L. J. 133, 137.

We conclude, therefore, that the prohibition against warehouse and storage yards in the ordinance was not

intended to prohibit the business of buying and selling used cars at retail as conducted by the plaintiff here.

And now, January 31, 1949, it is adjudged and decreed that the business of buying and selling used automobiles and motor vehicles at retail is not prohibited by article 3 (j), sec. 5, of the New Cumberland Borough Ordinance 88, adopted June 5, 1946.