**Lester W. HASEKAMP et al.,**
**Plaintiffs-Appellants.**

v.

**SUPERIOR EQUIPMENT COMPANY, INC.,**
**Defendant-Respondent.**

**No. 34399.**

Missouri Court of Appeals,
St. Louis District, Division 2.

Jan. 9, 1973.

386

James E. Crowe, Kenneth Byrne, St. Louis, for plaintiffs-appellants.

Husch, Eppenberger, Donohue, Elson & Cornfeld, Shulamith Simon, St. Louis, for defendant-respondent.

DOERNER, Commissioner.

By this action plaintiffs sought an injunction to enjoin and restrain the defendant from using its property as an alleged "Contractor's plant or storage yard," one of the uses prohibited by § 902.020 of the St. Louis Zoning Code in the "F" Local Business District. Defendant conceded that its property was located in that district and admitted that the operation of a contractor's plant and storage yard was prohibited by the Zoning Code, but it denied that its business was operated in violation of the Code; pleaded that plaintiffs' petition failed to state a claim upon which re-

lief could be granted, and affirmatively alleged that plaintiffs were barred from maintaining their action in that plaintiffs were guilty of laches. The trial court, in a comprehensive and well-written memorandum opinion, ruled that the Timothy Evangelical Lutheran Church of St. Louis, a pro forma decree corporation, and it alone, had standing to maintain the action; that the operation of defendant's business was in violation of the applicable use regulation; but that the plaintiffs were guilty of laches. Judgment was entered in favor of defendant, and after an unavailing motion for a new trial plaintiffs appealed therefrom.

Understandably so, in view of the basis upon which the trial court rendered judgment in favor of defendant, the sole point advanced by plaintiffs in their appeal is that there was no evidence to support the finding that the plaintiffs had been guilty of laches. In addition to controverting that issue defendant asserts here, as it did below, that none of the plaintiffs had standing to bring this action; and that as operated defendant's business was not in violation of the applicable portion of the Zoning Code. Since it is obvious that either of the latter two contentions, if valid, would be decisive of the plaintiffs' action we consider them first, in order.

■ The plaintiffs in the original petition were Hasekamp, Perschbacher, and Spitz, Trustees for Timothy Lutheran Church, and P. B. Cappel. In the petition the Trustees alleged that they were the legal titleholders to the property on the southwest corner of Fyler and Ivanhoe Avenues, the location of the plaintiffs' land. However, plaintiffs themselves introduced documentary evidence which showed that the legal title to the property they described was in fact vested in the pro forma decree corporation, the Timothy Evangelical Lutheran Church of St. Louis, hereinafter referred to as the Church Corporation. No evidence was introduced that the Trustees as such owned any other property in the foregoing zoning district. Cappel did not testify, and no evidence was produced to show that he owned any property in the district. After the close of plaintiffs' case, and over defendant's objection, the trial court permitted the addition of the Church Corporation as a party plaintiff and overruled defendant's motion for judgment. Hence it is clear that if any of the plaintiffs had standing to maintain the action it could only be the Church Corporation, since there was no evidence that the other plaintiffs owned property in the zoning district. Stickelber v. Board of Zoning Adjustment, Mo.App., 442 S.W.2d 134.

■ In Kellog v. Joint Council of Women's Auxiliaries Welfare Ass'n, Mo., 265 S.W.2d 374, the Supreme Court held that the essential element of special injury necessary to maintain an action to enjoin a violation of a zoning ordinance might consist not only of evidence of the depreciation in value or other pecuniary damage to the plaintiff's property, but also of the plaintiff's interest in the continuation and observance of the zoning classification when the property of both parties is situated in the same zoning district. In the instant case there was no evidence of depreciation in the value of the Church Corporation's property, or other pecuniary damage, by reason of the operation of defendant's business. Its property, as stated, is located on the southwest corner of the intersection of Fyler and Ivanhoe Avenues. One parcel of defendant's properties is situated on the northwest corner of that intersection, and a second parcel on the southeast corner. Defendant asserts that despite such proximity there was no evidence that the property of the Church Corporation was located in the same zoning district as that of the defendant. It is true that there was no direct evidence of that fact, but an inference to that effect may fairly and reasonably be drawn from a consideration of the whole evidence.

The second issue raised by defendant, that it was not operating a "Contractor's plant or storage yard" in violation of the zoning ordinance, presents a more difficult question. The defendant's own evidence showed that it was in the business of selling, repairing and installing gasoline pumps and other filling station equipment. In the course of its business it keeps on hand new equipment, which it sells to customers at retail, which equipment it may, or may not, install on the customer's premises according to the customer's instructions. New equipment on occasion is shipped to defendant by some of the major oil companies, and installed by defendant at one of the company's local stations. Defendant also keeps on hand used equipment for repair or other disposition. The bulk of the repairs it makes on a customer's equipment are made on the customer's own premises, but on occasion it does transport a customer's equipment to defendant's shop for the purpose of ascertaining whether it is economically feasible to repair it. Defendant furnishes the customer an estimate of the cost of the repairs, and makes them if directed to do so by the customer; or, if the customer determines not to have the repairs made, the damaged or inoperative equipment is hauled away to a junk yard. Some of the defendant's work is done under what was referred to as a "blanket contract," which the evidence disclosed consists in the main of a letter to a regular customer, such as a major oil company, stating that during the ensuing year the defendant's regular hourly labor rate, its overtime rate, and its holiday rate, for work ordered, would be stated amounts, so that the customer could determine the cost of such work. The defendant also submits bids on some jobs, and, where its bid is accepted, carries out the work according to the contract. In the operation of its business pumps and similar equipment are stored in all its buildings, as well as in the open in its yard in back of the building on the northwest corner of the intersection, for periods varying from a day to as long as four weeks for a particular piece of equipment.

In its memorandum opinion the trial court concluded that the operation of defendant's business was in violation of the zoning ordinance. It reached that conclusion, in brief, on the grounds that the defendant entered into contracts in its business, and was therefore a contractor; and on the grounds that defendant's premises were primarily used for the storage of used and new equipment. As the trial court noted, the phrase "Contractor's plant or storage yard" is not defined in the zoning ordinance, and neither counsel nor the court has cited us to any case concerning that term. Our own research has disclosed but one involving a somewhat similar phrase, that of Appeal of Kiddy, 294 Pa. 209, 143 A. 909, in which it was held that the use by the landowner to store cement and building materials in a garage on the rear of his property was a violation of the zoning ordinance which prohibited the use of lands for a "contractor's plant and storage therefor, except during the course of building construction."

■ In our opinion there are few more difficult judicial tasks than that of construing and determining the meaning of undefined, doubtful or ambiguous words or phrases employed in a legislative enactment. We are, of course, aware of the rule of construction that "In determining the meaning of an ordinance or statute pertaining to zoning, as well as other subjects, the courts generally seek to ascertain the intention of the lawmakers by giving the words used their ordinary meaning, by considering the entire act and its purposes, and by seeking to avoid unjust, absurd, unreasonable, confiscatory or oppressive results. * * *" Suburbia Gardens Nursery, Inc. v. County of St. Louis, Mo., 377 S.W.2d 266, 271. And see Evans v. Roth, 356 Mo. 237, 201 S.W.2d 357, 364, and Killian v. Brith Sholom Congregation, Mo.App., 154 S.W.2d 387, 395. But the difficulty lies in determining the ordinary

meaning of the word or phrase used, for as is true of many of the words of the English language they may have two or more ordinary meanings, depending upon the context in which they are employed. Thus an ornamental hedge has been held to be a "plant," Fezler v. Gibson, 183 Mo. App. 385, 166 S.W. 1096, and the same word used in the term "plant, equipment or facility" of a utility has been construed to mean its physical property. Rider v. Julian, 365 Mo. 313, 282 S.W.2d 484, 494. The same section of the ordinance presently under consideration also prohibits the operation of an "ice plant or storage house of more than 5 ton capacity," by which is undoubtedly meant premises used for the manufacturing of ice. And in Killian, l. c. p. 395, this court said of the word "storage" as used in the zoning ordinance that "* * * the underlying idea of the word 'storage' is that of holding or safekeeping goods in a warehouse or other depository * * *," and that "* * * As commonly used, the term is not to be applied to goods or merchandise on hand for immediate sale and disposition, as in the case of the monuments which Berger keeps on his premises for sale and not for storage, and which he sells, as does any other retail merchant, whenever a purchaser may be found."

The key word in the phrase, "Contractor's plant or storage yard," in our view, is that of "contractor's." The trial court noted that there does not appear to be a plain, simple, common or ordinary use of the word "contractor," and quoted from Dougherty-Moss Lumber Co. v. Churchill, 114 Mo.App. 578, 90 S.W. 405, 407, that "* * * In a general sense every party to a contract is a contractor, * * *". However, the continuation of that quotation reads "but the term as used in statutes relating to mechanics' (sic) liens has a restricted meaning. It refers to one who, under contract with the owner, undertakes for a consideration to furnish the material, labor, and superintendence required in the improvement of the owner's premises, ei-ther in the erection of a structure thereon or in the alteration or repair of one in existence. * * *" It is true that in a general sense every party to a contract is a "contractor." And in that general sense of the word so also is an "Automobile body or fender repair shop," a "Dyeing and cleaning works," a "Laundry," a "Livery stable or riding academy," a "Lumber yard," or "Storage warehouse," which businesses, and others, are likewise prohibited by the same section of the zoning ordinance; for inherent in the operation of all such businesses is the making of contracts, expressly or implicitly. But in our opinion the word "Contractor's" was not used by the City's legislative body in its general sense. This for the reason that had that body intended to use the word "contractor" in its general sense it would not have been necessary for it to have specifically enumerated the various businesses specifically named; and for the further reason that such an interpretation of the word is inconsistent with both the letter and spirit of Section 909.020, which provides that "A building or premises may be used for any purposes except the following," thus indicating the intention to prohibit only those businesses expressly prohibited.

What, then, is the common, plain and ordinary meaning of the phrase "Contractor's plant or storage yard?" We have reached the conclusion that to the average person (if there is such an individual, one as difficult to find as the ordinarily prudent man) the phrase connotes one who is engaged in some area of the building or construction industry, and who stores material and equipment on the premises in which he carries on his business. We believe that to most persons the word "contractor" means one who engages in general in the erection, alteration, or repair of buildings, and that when preceded by an adjective, such as "excavating contractor," "brick contractor," it describes one who is primarily engaged in the limited area of the building or construction industry. Accordingly, we conclude that the

defendant's business of selling, repairing and installing gasoline pumps and other filling station equipment was not prohibited by Section 902.020 of the zoning code.

■ As stated, while the trial court determined that the operation of defendant's business on its premises was in violation of the zoning ordinance it denied relief to the plaintiffs on the grounds that they had been guilty of laches. We fully concur with that conclusion, particularly as to the Church corporation, the only plaintiff having standing to complain. The undisputed evidence was that the defendant purchased the first part of its present property, situated on the northwest corner of the intersection, in 1963 for $11,000.00. In August, 1964 defendant purchased an adjoining lot and erected thereon a 20′ x 60′ concrete block addition to its original building. The record does not reflect either the purchase price or the cost of the new building. In 1967 defendant purchased another lot, with a building thereon, located to the north of its first additional building. And in 1969 defendant purchased the parcel on the southeast corner of the intersection, at a cost of $35,000.00, had the property rezoned, and rehabilitated an old filling station and garage thereon by replacing the floor and 80 to 90% of the glass, fencing and paving the outside area, re-wiring and painting the structure, and landscaping. On each occasion when a purchase of land was made, a new building erected, or an old one altered, the defendant sought the required occupancy, building or other permit from the City and in each instance it was granted. Max W. Feuerbacher, Chief Building Inspector for the City's Department of Public Safety, who was called as a witness by the defendant, testified that he was familiar with the defendant's property, that his department issued the various permits after checking the applications for compliance with the zoning code, and that his department had interpreted the code to permit the keeping of equipment in connection with its sale or repair. Feuerbacher stated that within two blocks north of the defendant's premises there was an electrical contractor, a home improvement contractor, a heating and air conditioning company, and the St. Louis Furnace Supply, all of which were in the same zoning district as the defendant, the "F" Local Business District. The uncontroverted evidence was that defendant had operated its business in precisely the same manner since it first began to operate at its present location in 1963. The evidence is likewise clear that no objection or complaint had been made by the Church Corporation until 1969, and the thrust of that complaint, as we gather from the record, concerned the alleged aesthetics of defendant's yard, rather than a claim of a violation of the zoning code. Defendant apparently made an effort to rectify the situation, because Feuerbacher wrote the pastor of the church that defendant had made a concerted effort to clean up the area and divorce the storage yard use. Thus it is undisputed that since 1963 defendant has uninterruptedly continued to carry on its same business of selling, repairing and installing filling station equipment, has continued to acquire additional property for substantial sums and has made expensive additions and improvements to its property. Such use of defendant's premises was open and obvious from its inception, a fact of which the Church Corporation and the members of the Church's congregation could not help but be aware. Plaintiff Hasekamp, a member of the congregation for some twenty-five years, and a trustee in 1962 and again from 1966 to trial time, conceded on cross-examination that he was familiar with the defendant's property from 1963 and had observed defendant's use of it throughout the years. Nevertheless, no complaint that the defendant was violating the zoning ordinance was made until March 10, 1970, when the church's Board of Trustees authorized the institution of this action, a date long after the operation of defendant's business had begun, and after it had made the purchases and improvements described, at great expense. Irrespective of the construction

made of section 909.020 of the zoning code, the defendant was entitled to judgment. As the trial court stated, balancing the equities under the circumstances shown in this case requires that the court deny the relief sought by plaintiffs on the grounds of laches. Schaeffer v. Moore, Mo., 262 S. W.2d 854; Selsor v. Shelby, Mo.App., 401 S.W.2d 169; State ex rel. Burns v. Stanton, Mo.App., 311 S.W.2d 137.

For the reasons stated the judgment is affirmed.

PER CURIAM:

The foregoing opinion by DOERNER, C., is adopted as the opinion of the court. Accordingly, judgment affirmed.

SMITH, P. J., and SIMEONE and KELLY, JJ., concur.