

Court of Appeals
Fourth Court of Appeals District of Texas
San Antonio



# MEMORANDUM OPINION

No. 04-09-00421-CV

**ED-SAL INVESTMENTS, LTD.,**
Appellant

v.

**NEEDMORE RANCH II, LTD.,**
Appellee

From the 111th Judicial District Court, Webb County, Texas
Trial Court No. 2008-CVQ-001272-D2
Honorable Raul Vasquez, Judge Presiding

Opinion by:     Phylis J. Speedlin, Justice

Sitting:          Karen Angelini, Justice
                  Phylis J. Speedlin, Justice
                  Rebecca Simmons, Justice

Delivered and Filed:  December 15, 2010

REVERSED AND RENDERED, INJUNCTION DISSOLVED

Ed-Sal Investments, Ltd. and Needmore Ranch II, Ltd. filed competing motions for summary judgment on the issue of whether a restrictive covenant in a deed prohibiting "commercial petroleum or petroleum byproducts storage yards" includes a truck stop. The trial court granted summary judgment in Needmore Ranch's favor, agreeing that the restrictive covenant prohibited the operation of a truck stop on the property at issue. We reverse the judgment of the trial court, and render judgment in Ed-Sal's favor.

**FACTUAL AND PROCEDURAL BACKGROUND**

In 2007, Ed-Sal acquired title to two parcels of land in Laredo pursuant to two special warranty deeds. The first parcel consists of 1.5281 acres; the second parcel consists of 4.0219 acres. Both parcels of land are subject to restrictive covenants contained in a separate warranty deed dated January 10, 1994 ("the 1994 warranty deed"). In the 1994 warranty deed, section (d) of the "Restrictive Covenants" specifically prohibits fourteen operations and uses on any portion of the property, including the following:

> Commercial petroleum or petroleum byproducts storage yards; except in limited amounts which are not stored for resale and are used by the owner or tenant in conjunction with the primary land use, and then only with the written approval of Dolores Development Company.[1]

Soon after acquiring the 1.5281 acre tract, Ed-Sal recorded a plat for 1.5255 acres in anticipation of building and operating a truck stop on the land. Ed-Sal's plans for the truck stop called for a restaurant, shower facilities, bathroom facilities, a driver's lounge, possibly a game station or room, laundry facilities, gasoline pumps, as well as a facility that would sell food and beverages. Thereafter, Needmore Ranch notified Ed-Sal that the restrictive covenants in the 1994 deed: (1) require approval of any plat by Needmore Ranch; (2) preclude the platting of any property less than two acres in size; and (3) prohibit the operation of a truck stop on the property. In response, Ed-Sal replatted the property and obtained the necessary approvals from the City of Laredo and Needmore Ranch for the platting. Needmore Ranch continued to withhold approval for the building of a truck stop on the property.

Ed-Sal then sued Needmore Ranch, requesting a judgment declaring that Ed-Sal may operate a truck stop on the property and permanently enjoining Needmore Ranch from interfering with Ed-Sal's efforts to build and operate a truck stop. Needmore Ranch answered

---

[1] Needmore Ranch is the successor in interest to Dolores Development Company.

and counterclaimed seeking a declaration that the 1994 warranty deed prohibited the construction and operation of a truck stop. The parties filed competing motions for traditional summary judgment. Ultimately, the trial court granted summary judgment in favor of Needmore Ranch. The order states that Ed-Sal is permanently enjoined from (1) constructing and/or operating a truck stop on the property and (2) storing, selling and/or reselling gasoline, diesel fuel, commercial petroleum and/or petroleum byproducts on the property. Ed-Sal now appeals.

## STANDARD OF REVIEW AND APPLICABLE LAW

The standards for reviewing summary judgments are well established. We review the trial court's decision to grant summary judgment *de novo*. *Tex. Mun. Power Agency v. Pub. Util. Comm'n of Tex.*, 253 S.W.3d 184, 192 (Tex. 2007). The party moving for summary judgment has the burden of showing no genuine issue of material fact exists and it is entitled to judgment as a matter of law. *See* TEX. R. CIV. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985). Where both parties file motions for summary judgment and one is granted and one is denied, we may consider all questions presented and render the decision the trial court should have rendered. *See Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 566 (Tex. 2001); *Jones v. Strauss*, 745 S.W.2d 898, 900 (Tex. 1988) (per curiam) (orig. proceeding). If a movant does not show its entitlement to summary judgment as a matter of law, we must remand the case to the trial court. *See Gibbs v. Gen. Motors Corp.*, 450 S.W.2d 827, 829 (Tex. 1970).

We review the trial court's construction of a restrictive covenant *de novo*. *Ski Masters of Tex., LLC v. Heinemeyer*, 269 S.W.3d 662, 667 (Tex. App.—San Antonio 2008, no pet.); *Owens v. Ousey*, 241 S.W.3d 124, 129 (Tex. App.—Austin 2007, pet. denied). "[R]estrictive covenants are subject to the general rules of contract construction." *Pilarcik v. Emmons*, 966 S.W.2d 474,

478 (Tex. 1998); *see also Sonterra Capital Partners, Ltd. v. Sonterra Prop. Owners Ass'n, Inc.*, 216 S.W.3d 417, 420-21 (Tex. App.—San Antonio 2006, pet. denied). Covenants are examined as a whole in light of the circumstances present when the parties entered into the agreement. *Pilarcik*, 966 S.W.2d at 478. "We give effect to every sentence, clause, and word of a covenant, and avoid constructions that would render parts of the covenant superfluous or inoperative." *Owens*, 241 S.W.3d at 130 (citing *City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 29 (Tex. 2003)). The reviewing court's primary intent is to ascertain and give effect to the true intention of the parties as expressed in the instrument. *Owens*, 241 S.W.3d at 129. Restrictive covenants are liberally construed to effectuate their purposes and intent. *See* TEX. PROP. CODE ANN. § 202.003(a) (West 2007).

Whether a restrictive covenant is ambiguous is a matter of law for the court to decide. *Pilarcik*, 966 S.W.2d at 478. A covenant is unambiguous if, after appropriate rules of construction have been applied, the covenant can be given a definite or certain legal meaning. *Id.*; *Pitman v. Lightfoot*, 937 S.W.2d 496, 517 (Tex. App.—San Antonio 1996, writ denied) (holding same concerning contracts generally). By contrast, if, after appropriate rules of construction have been applied, a covenant is susceptible of more than one reasonable interpretation, the covenant is ambiguous. *Pilarcik*, 966 S.W.2d at 478. Mere disagreement over a restrictive covenant's interpretation does not necessarily render the covenant ambiguous. *Hodas v. Scenic Oaks Prop. Ass'n*, 21 S.W.3d 524, 528 (Tex. App.—San Antonio 2000, pet. denied); *Air Park-Dallas Zoning Comm. v. Crow-Billingsley Airpark, Ltd.*, 109 S.W.3d 900, 909 (Tex. App.—Dallas 2003, no pet.).

Under the "four corners" rule, we ascertain the intent of the parties solely from the language in the deed. *Concord Oil Co. v. Pennzoil Exploration & Production Co.*, 966 S.W.2d

451, 465 (Tex. 1998); *Cherokee Water Co. v. Freeman*, 33 S.W.3d 349, 353 (Tex. App.—Texarkana 2000, no pet.). The intent that governs, however, is not the intent that the parties meant but failed to express, but the intent that is expressed. *Cherokee Water*, 33 S.W.3d at 353. The process of deed construction has been described as three-tiered: (1) the court attempts to ascertain the grantor's intent by examining the plain language of the deed; (2) the court then applies applicable rules of construction to the deed; and (3) the court considers extrinsic evidence to aid interpretation. *Cherokee Water*, 33 S.W.3d at 353. The third tier, the admission of extrinsic evidence, is not reached unless the intent of the parties is unclear because the deed is ambiguous. *Cherokee Water*, 33 S.W.3d at 353 (citing *Stauffer v. Henderson*, 801 S.W.2d 858, 863 (Tex. 1990)).

## DISCUSSION

The parties concede, and we agree, that the language of the restrictive covenant at issue is unambiguous. *See Dynamic Publ'g & Distrib. L.L.C. v. Unitec Indus. Ctr. Prop. Owners Ass'n, Inc.*, 167 S.W.3d 341, 345 (Tex. App.—San Antonio 2005, no pet.) ("If a written contract is so worded that it can be given a definite or certain legal meaning, then it is not ambiguous."). Accordingly, we look only to the language of the restrictive covenant, and not to extrinsic evidence, when ascertaining the parties' intent. *Davis v. Pletcher*, 727 S.W.2d 29, 34 (Tex. App.—San Antonio 1987, writ ref'd n.r.e.). Before deciding what operations and uses the drafters of the 1994 warranty deed intended to prohibit on the property, we must first examine the grammatical structure of the restrictive covenant. Needmore Ranch reads the "or" between "commercial petroleum" and "petroleum byproducts storage yards" as disjunctive, meaning that "commercial petroleum" is a stand-alone condition or use that includes "the retail or wholesale sale of products such as gasoline or diesel fuel." Thus, Needmore Ranch contends the language

of the restrictive covenant prohibits (1) commercial petroleum (i.e., "the retail or wholesale sale of products such as gasoline or diesel fuel") and (2) petroleum byproduct storage yards.

Ed-Sal, on the other hand, reads both "commercial petroleum" and "petroleum byproducts" as adjectival phrases modifying the complex noun "storage yards." Thus, Ed-Sal contends the restrictive covenant prohibits storage yards holding either commercial petroleum or petroleum byproducts. In support, Ed-Sal relies on *Cherokee Water Co. v. Freeman*, in which the Texarkana Court of Appeals interpreted the following deed language: "The Grantor and his children living or visiting with him are hereby given . . . a right to fish on the land . . . ." *Cherokee Water*, 33 S.W.3d at 354. The lower court had construed the deed to mean that any children who were alive could fish on the property because "with him" only appeared after "visiting." The appellate court disagreed, and held that "or" connected "with him" to both "living" and "visiting." *Id*. Thus, only children living with the grantor and children visiting with the grantor were permitted to fish on the land. *Id*.

We agree with Ed-Sal's construction of the covenant language. Just as in *Cherokee Water*, the drafter chose to use "or" as a way to connect both "commercial petroleum" and "petroleum byproducts" with "storage yards." Instead of saying "commercial petroleum storage yards and petroleum byproduct storage yards," the drafter chose to use the conjunction "or" to express the same proposition. Further, we cannot agree with Needmore Ranch that the drafter intended for "commercial petroleum" to be a stand-alone prohibited use. "Commercial petroleum" alone does not describe a land use or operation; rather, it is a product or thing. The other restrictions in the 1994 deed, in contrast, refer to specific land operations and uses, such as

drilling, refining, distillation, dumping, and smelting.[2]  Accordingly, we conclude the restrictive covenant at issue prohibits storage yards holding commercial petroleum or petroleum byproducts.

Having decided that "commercial petroleum" and "petroleum byproducts" modify the words "storage yards," we next must decide whether a truck stop qualifies as a commercial petroleum or petroleum byproducts storage yard.  At the outset, we note the parties stress different sections of the restrictive covenant in support of their arguments.  Needmore Ranch argues Ed Sal's own manager and expert established through summary judgment evidence that Ed Sal intends to use the property to sell diesel fuel and gasoline (which Needmore Ranch argues are commercial petroleum and petroleum byproducts), store that diesel fuel and gasoline on the property, and then resell it to the public.  According to Needmore Ranch, such use is unambiguously prohibited by the restrictive covenant which Needmore Ranch contends "prohibits storage of commercial petroleum or petroleum byproducts for resale."  Needmore Ranch further asserts its interpretation harmonizes the entire restrictive covenant, including the exception language "that only permits storage of 'limited amounts,' and even then, not for resale

---

[2] The restrictive covenant prohibits the following fourteen operations and uses:
(1)  Residential uses of any type.
(2)  Trailer courts, recreational vehicle campgrounds, or any temporary residential use of any kind including but not limited to migrant worker or other labor camps.
(3)  Junkyards or recycling facilities.
(4)  Drilling for and removing of oil, gas, or hydrocarbon substances.
(5)  Refining of petroleum or petroleum byproducts.
(6)  Commercial petroleum or petroleum byproducts storage yards; except in limited amounts which are not stored for resale and are used by the owner or tenant in conjunction with the primary land use, and then only with the written approval of Dolores Development Company.
(7)  Commercial excavation, mining, or outdoor storage of building or construction materials, except for excavation and storage necessary in approved construction.
(8)  Fat rendering.
(9)  Distillation of bones.
(10)  Stockyards, animal slaughter, or animal processing facilities.
(11)  Dumping, disposal, incineration, or reduction of garbage, sewage, offal, dead animals, or other refuse.
(12)  Smelting of iron, tin, zinc, or other ore or ores.
(13)  Jails, prisons, detention centers, or honor farms.
(14)  Cemeteries.

but just for primary land use." Ed-Sal replies that the restrictive covenant prohibits two types of storage yards and a truck stop is simply not a storage yard. Additionally, Ed-Sal stresses that the exception language found within the restrictive covenant applies only if a storage yard is at issue.

While it is true that we read the covenant as a whole and give effect to every sentence, clause, and word, we disagree with Needmore Ranch's reading of the restrictive covenant. Exceptions are limitations on the language that precedes them. *See Silver Spur Addition Homeowners v. Clarksville Seniors Apts*., 848 S.W.2d 772, 775 (Tex. App.—Texarkana 1993, writ denied). Here, we have a restrictive covenant and a limiting exception to that restrictive covenant. In other words, the restrictive covenant prohibits a "commercial petroleum or petroleum byproducts storage yard" on the property at issue *unless* the "commercial petroleum or petroleum byproducts storage yard" meets all three prongs of the exception—i.e., (1) "limited amounts which are not stored for resale," (2) "used by the owner or tenant in conjunction with the primary land use," and (3) "with the written approval of [Needmore Ranch]." If all three prongs are met, the "commercial petroleum or petroleum byproducts storage yard" is permitted. The exception language does not define or clarify what is meant by a "commercial petroleum or petroleum byproducts storage yard." We certainly cannot say, as Needmore Ranch seems to suggest, that the exception language demonstrates that the drafters intended to prohibit truck stops where fuel is sold. We must still decide whether a truck stop is an operation or use falling within the restrictive covenant prohibiting a "commercial petroleum or petroleum byproducts storage yard."[3]

---

[3] Needmore Ranch also contends its reading of the restrictive covenant is correct because in *Smith v. Mobil Oil Corp*., 495 S.W.2d 628 (Tex. Civ. App.—Eastland 1973, no writ), the following restrictive covenant was held to prohibit the use of the plaintiffs' property as a driveway for a service station:

> It is expressly agreed and covenanted between the parties hereto that at no time within a period of 25 years from the date hereof shall the following described land be used for the storage, sale, distribution or advertising of petroleum or by-products thereof.

Unable to locate authority defining or discussing a petroleum storage yard, we look to the plain, ordinary meaning of the term "storage yard." *Heritage Resources, Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996) (observing that when courts construe unambiguous instruments they "give terms their plain, ordinary, and generally accepted meaning"); *Wilmoth v. Wilcox*, 734 S.W.2d 656, 657-58 (Tex. 1987) (words and phrases used in a covenant will be given their commonly accepted meaning). The term "storage" implies that goods will be kept in bulk and not available for immediate sale or disposition. *See* BLACK'S LAW DICTIONARY 1273 (5th ed. 1979) (defining "storage" as "safekeeping of goods in a warehouse or other depository"); *see also* THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE (3rd ed. 1996) (defining "yard" as "a tract of ground adjacent to, surrounding, or surrounded by a building or group of buildings").

In *Hasekamp v. Superior Equip. Co.*, 490 S.W.2d 385 (Mo. Ct. App. 1973), a Missouri court of appeals was asked to determine whether a defendant was using property as a "storage yard" in violation of a zoning ordinance. The court noted:

> . . . [T]he underlying idea of the word 'storage' is that of holding or safe keeping goods in a warehouse or other depository . . . As commonly used, the term is not to be applied to goods or merchandise on hand for immediate sale and disposition, as in the case of the monuments which [defendant] keeps on his premises for sale and not for storage, and which he sells, as does any other retail merchant, whenever a purchaser may be found.

*Id*. at 389 (quoting *Killian v. Brith Sholom Congregation*, 154 S.W.2d 387, 395 (Mo. Ct. App. 1941)). Ed-Sal argues the reasoning in *Hasekamp* is sound and applies here because the truck stop it seeks to build is not intended as a depository to hold, store, or safeguard goods, and therefore, would not qualify as a "storage yard."

---

*Id*. at 629. We find *Smith* to be distinguishable; the restrictive covenants are different. In *Smith*, there was a clear restriction against "the storage, sale, distribution or advertising of petroleum or by-products thereof." *Id.*

We agree with Ed-Sal and cannot conclude that a truck stop meets the common definition of a storage yard. The truck stop envisioned by Ed-Sal is a retail business, and not a warehouse for storing petroleum products. Even the fact that some fuel may be kept on the premises until it is sold does not convert the truck stop into a petroleum storage yard. In *Keller v. Lyman*, 66 Pa. D. & C. 591, 594-95 (1949), the defendants sought to stop the operation of a used car lot on property that was subject to an ordinance which prohibited "warehouses or storage yards." The court held that although slow-turnover could cause some cars to sit on the lot for a long period of time, the car lot was not a warehouse or storage yard because all retailers have held merchandise for an extended period of time. *Id*. Were the opposite true, Home Depot would not be a home improvement establishment, but a lumber yard, and HEB would not be a grocery store, but a food warehouse. *See id.*

Further, our interpretation avoids the unreasonable result of prohibiting the sale of fuel and gasoline on the property when the plain language of the restrictive covenant prohibits only the storage of such products. *See Fitzgerald v. Advanced Spine Fixation Sys*. *Inc*., 996 S.W.2d 864, 867 (Tex. 1999) (noting that court's construction of plain language of a statute must avoid absurd results if the language will allow). Finally, we note the drafters of the 1994 warranty deed were very specific about listing the prohibited land uses and operations, including recreational vehicle campgrounds, junkyards, stockyards, jails, and cemeteries. It is therefore reasonable to assume that had the drafters intended to prohibit truck stops or gas stations, they could have specifically done so. We therefore hold as a matter of law that a truck stop is not a commercial petroleum or petroleum byproducts storage yard, and that the restrictive covenant at issue in this lawsuit does not prohibit Ed-Sal from building and operating a truck stop on the subject property. Accordingly, we sustain Ed-Sal's issues on appeal, and reverse the judgment

of the trial court. Because the parties submitted competing motions for summary judgment, we render the judgment the trial court should have, and declare that building and operating a truck stop on the subject property would not violate the restrictive covenant prohibiting commercial petroleum or petroleum byproducts storage yards.

## CONCLUSION

We reverse the judgment of the trial court, dissolve the injunction, and render judgment in Ed-Sal's favor.

Phylis J. Speedlin, Justice